# CHARLESTON.

### ARNETT *v.* FAIRMONT TRUST CO. ETC., *et al.*

Submitted June 7, 1910.    Decided February 6, 1912.

1. CHARITIES—*Bequests—Indefiniteness.*

    Bequests by a testatrix, one of $40,000, to trustees named, "to be placed and used to the very best of said parties knowledge in helping the poor those who are deserving, in lifting young men up and helping the work along in putting down intoxicants drinks and saving souls. Let this money be used in the way God may direct for His cause"; the other of, "$10,000 to be placed in the Baptist Church to be used for Lord's work in the way he may direct", are void for uncertainty.    (p. 299).

2. WILLS—*Construction—Residuary Devise.*

    The residuary clause of the will of the testatrix, containing said void bequests, is: "If any money left after distribution let it be return to the estate of C. W. Arnett." The money bequeathed by the testatrix had all been derived by her through the executor of the will of her husband, C. W. Arnett, by her act of renunciation. Under the proof, said residuary clause is valid, and by proper construction means: If any money is left, after distribution, let it be returned to the executor of the will of C. W. Arnett, deceased, and go and be distributed as a part of his estate and as directed by his will.    (p. 305).

(ROBINSON AND WILLIAMS, JUDGES, dissenting).

Appeal from Circuit Court, Marion County.

Bill by Glenn J. Arnett and others against the Fairmont Trust Company and others. Decree for plaintiffs, and defendants appeal.

*Affirmed in part.    Reversed in part.*

*Geo. M. Alexander* and *Charles Powell,* for appellants.

*W. S. Meredith,* for appellee Arnett; *William S. Haymond,* for appellees Ogden and others.

MILLER, JUDGE:

On July 8, 1907, Mrs. C. W. Arnett, by an instrument, wholly in her own handwriting, undertook to make a testamentary disposition of her property, as follows:

"Should I not live I place in the hands of my two brothers, Dr's. W. C. Jamison and J. A. Jamison and Rev. W. J. Eddy the sum of $40,000 dollars (or if one or more of said parties should not be living that the Trust Company select two Christian men in place of absent one) to be placed and used to the very best of said parties knowledge in helping the poor those who are deserving, in lifting young men up and helping the work along in putting down intoxicants drinks and saving souls. Let this money be used in the way God may direct for His cause.

"To my sister Lou John I give $3,000 my brother Pierce L. Jamison $1,000 my sister Ellen Fear $2,000 my brother David Lee Jamison $1,000 $1,000 to Mrs. Rie Arnett. Let her use all that may be needed to make her daughter Ora comfortable.

"Continued July 8th, 1907.

"$3,000 I put into the hands of my brother, Doctor W. C. Jamison or should he not be living let the Trust Company select a true competent man. the money to be used for my son Glenn J. Arnett if at any time he may be in need of help but in no way or at any time to be instrumental the use of said money in causing him to do wrong. But should he prove worthy, and live right let the money be used in helping him in business or in any way right.

"$50.00/00 fifty dollars I place for an office desk my son Glenn J. Arnett.

"$125.00/00 for the best Type writer.

"$1,000 to be used in buying a home for Miss Dora Bell Arnett and to make her comfortable.

"$10,000 to be placed in the Baptist Church to be used for Lord's work in the way he may direct.

"If any money left after distribution let it be return to the estate of C. W. Arnett."

The plaintiff, Glenn J. Arnett, son of the testatrix, and for whom provision is made in the will, charges in his bill that the purported bequests, of $40,000 in the first clause, and of $10,-000 to the Baptist Church, in the next to the last clause, as well as the last or residuary clause, providing, that "If any money left after distribution let it be return to the estate of C. W. Arnett," are each wholly void for uncertainty. He professes his willingness, however, that the Baptist Church, to whom $10,000 is given, should be paid, not the full amount, but a ratable proportion of the net amount of the estate, alleging that the estate is not sufficient to pay all bequests in full.

It is charged, among other things, that as to said $40,000, and $10,000 bequests, the testatrix died intestate, and that plaintiff as her sole heir at law is entitled to the whole amount thereof.

The Fairmont Trust Company, administrator with the will annexed of the estate of said testatrix, and as executor of the estate of C. W. Arnett, deceased, with others, is made a defendant. An injunction is prayed for restraining the payment of said legacy of $40,000; and there is also a prayer for an accounting; for a decree for the money found due plaintiff on settlement, and for general relief.

We think the bill is good on demurrer, and that the demurrer was properly overruled.

The Fairmont Trust Company in its answer, as administrator with the will annexed of said testatrix, admits that the two bequests of $40,000 and $10,000 respectively, and the last or residuary clause, are all very indefinite, and that it is unable to administer the estate without a construction of the will, and the advice of the court. In its answer and cross bill, as executor of the will of said Calvin W. Arnett, deceased, said company admits and charges the invalidity of the bequests, $40,-000 and $10,000, and prays that they be so declared. But it denies that the last or residuary clause is invalid; on the contrary it charges the same to be legal and valid, and competent to carry the whole of the estate of said testatrix, not legally disposed of by her will, back into the estate of said testator,

from which it was derived by her, by her act in renouncing his will, and it prays for that relief.

On this appeal, by Marguerite Wilcox, (late Arnett) and by the Fairmont Trust Company, in both its fiduciary capacities, two questions are presented: first, whether the court below erred in its final decree, in adjudging on bill and cross bills, the bequests of $40,000 and of $10,000 respectively, to be void; second, whether the court erred in decreeing also said last or residuary clause to be also void for uncertainty.

Clearly the two bequests of $40,000 and $10,000 are void for uncertainty. This is practically conceded. The main contention is as to the last or so called residuary clause. Is it also void, or is it competent to carry the money covered by the invalid bequests back into the estate of C. W. Arnett? Section 13, chapter 77, Code 1906, relating to wills provides: "Unless a contrary intention shall appear by the will, such real estate or interest therein as shall be comprised in any devise in such will, which shall fail or be void, or otherwise incapable of taking effect, shall be included in the residuary devise (if any) contained in such will; and if there be no residuary devise therein, such real estate or interest shall go to the heirs-at-law of the testator, as if he had died intestate."

The clause in question is in form clearly a residuary clause, but if it be also void for uncertainty, as it is claimed it is, and as the court below decreed, there is no error in the decree; otherwise there is, and for which it must be reversed. The language is: "If any money left after distribution let it be return to the estate of C. W. Arnett."

It is evident from the language used, that to sustain the clause as a valid disposition of property, we must be able, under recognized rules of construction, to interpret the words "estate of C. W. Arnett," as definitely referring to the executor of the will of C. W. Arnett, deceased, and also to interpolate after them these words, or their equivalent, "to be taken, held and administered as a part of his estate and according to the terms and provisions of his will." If the intention of the testator be clear, well recognized rules of construction permit courts to supply and interpolate words, and even to fix the sense of ambiguous words. It is well settled, that in the disposition of

property by will, the subject and object of a devise or bequest must be definite and certain.   4 Minor Inst. 96; *Pack* v. *Shanklin,* 43 W. Va. 304.   In the application of these rules, however, the decisions are not all in harmony.   In this case do the words of the residuary clause indicate with reasonable certainty a person capable of taking the bequest?   The rules require us to gather the meaning and intent from the whole will.   Can we say with any certainty that by the words "estate of C. W. Arnett," the testatrix meant executor of the will of said decedent, and that the property should go and be administered in the same way in which his property is directed to go?   We observe in the residuary clause, the words "return to" immediately preceding the words quoted, plainly implying that the money bequeathed had at some time been a part of that estate, else it could not be returned to it.   May we not say with reasonable certainty that as the evidence shows her husband left a will, and the will is produced in evidence, and as it is shown she obtained the money disposed of in her will, from the executor of her husband's will, by renouncing the provision thereof in her favor, that by directing the residue of her estate thus acquired to be returned to his estate she meant to say to his executor, and through the same channel it had come to her, and to go as by his will it was originally intended to go.   We think we may safely infer this to have been her intent, but are the words employed susceptible of that interpretation?   We know by reference to a copy of her answer filed in another suit, brought by said company as executor, to construe the will of her husband, and vouched with the answer and cross bill of said company in this suit, that, except as to the amount of the annual allowance provided for her therein, she was fully satisfied with his will, and expressed her desire, if a larger annual allowance was provided for her, that the residue of his estate should go as directed by his will.

Let us refer to some authorities bearing on the question. In an old English book, Hawkins on Wills, cited by the Court of Errors and Appeals of New Jersey, in *Halsey* v. *Patterson,* 37 N. J. Eq. 445, 448, it is laid down as a rule that a bequest of personal estate to the "representatives," or "legal," or "personal" or "legal personal representatives" of any one, means

*prima facie* executors or administrators.  By the will of the
testatrix in that case, after certain specific bequests, by the
fourth clause, she gave all the rest and residue of whatever
kind and nature, which she owned or was possessed of, prior to
the death of her husband, to four persons, to be equally divided
among them.  She next gave all the property and estate which
might have been devised or bequeathed to her by the will of
her late husband, "to his legal representatives."  It was held
that by the gift to her husband's "legal representatives" she
had intended a gift to his executors.  In another case, of *Long*
v. *Watkinson,* 17 Beaven 471, the testator by his will, directed
his executors to pay the residue and remainder of his estate and
effects to his sister, with this proviso: "But, in case of my said
sister's death, my instructions are then to pay over all the res-
idue and remainder of my estate and effects to the executors
or executrixes which my said sister, Mrs. Mary Fowler, may
appoint."  His sister died a few days before the testator, leav-
ing Mary Long her sole executrix, and Isabella Watkinson, her
sole residuary legatee.  After citing some prior decisions the
Master of the Rolls held, that the true interpretation of his
will was, that his residuary estate was to go to the executrix of
his sister, though she died before him, to be administered by
her as a part of her estate.  In 2 Redfield on Wills, (2nd Ed.)
409, the author, after citing some cases, observes: "But after
some dissent, it seems now finally settled, both by decisions
of the English courts, and finally by statute, that unless a con-
trary intention appear by the context, whatever is bequeathed
to the executors or administrators vests in them, as a part of
the personal estate of the testator or intestate."  And in the
following section this author says: "And it seems that be-
quests to the executors, &c. of any person, will make the estate a
portion of the estate of such person in the fullest sense, so that
it will be subject to the disposition of the will of such person,
notwithstanding such person may die before the testator."

In *Webb* v. *Den,* 17 Howard 576, the terms of a deed were
under construction.  It contained no words of give, grant, bar-
gain, and sell, and so forth, but only "a release and quit claim
forever, unto the legatees and devisees of Anthony Bledsoe, de-
ceased."  The will of Bledsoe was in evidence.  The objec-

tion to the deed was, that it had no effective words of grant in fee, and neither stated a consideration nor sufficiently described the grantees. The court held, that the deed necessarily referred to the will, to ascertain the persons who were such "legatees and devisees", and thus far incorporated it, and that it contained therefore a sufficient description of the grantees.

We understand counsel for the appellees to practically concede that if in place of the words used, by the testator, she had said "let it be returned to the executor of the estate of C. W. Arnett", the effect of the bequest of the residuum of her estate, would have been to put it back into the estate of her husband, to be distributed as a part of his estate. His position furthermore is that as the will of the testator, though in evidence, is nowhere referred to in the will of the testatrix, the former cannot be looked to to render certain the bequest of the testatrix, or to determine to whom the residuum of her estate is to go, or how to be distributed. Besides the general rules which counsel invoke, as to the certainty and definiteness of the subjects and objects required in a devise or bequest, he relies upon *Clinton* v. *Hope Insurance Co.,* 45 N. Y. 455, 461, and *Simmons* v. *Spratt,* 20 Fla. 495, 505. The Florida case was an ejectment suit. The deed involved was that of the executors of one I. D. Hart. The executors by it, "sets apart, distributes and conveys unto the estate of Daniel W. Hart," a certain lot. The court in that case observes: "The question is, does a deed of conveyance by the executors of I. D. Hart, who, under his will and an order of the court, are authorized to distribute I. D. Hart's estate, conveying and setting apart this lot to the estate of Daniel W. Hart, vest such title in the devisee of Daniel W. Hart who alone under the terms of his will could acquire it as would enable such devisee to maintain ejectment?" The Florida court thought in that case that the description of the grantee, "the estate of Daniel W. Hart" in the deed, was too vague and uncertain to constitute a good grant at law, and observed: "Here there is no grantee by name or otherwise, and no reference to the will of D. W. Hart is made." No authorities are cited by the court for this conclusion; but it is admitted that there are some cases, which make such a deed effective to pass title to the administrator, where he takes the title of the

intestate, but the court did not think that a parallel case. It is then observed: "The greatest extent to which the courts have gone in the matter of ascertaining the grantees in an uncertain deed is to permit extraneous evidence to be given to ascertain to whom such description is meant to apply when such evidence can explain the plain uncertainty, but at the same time accomplish a manifest intention." By way of illustration the court cites *Webb* v. *Den, supra,* where the deed was to the "legatees and devisees of the late Anthony Bledsoe." This language, says the court, necessarily restricted the grantees to such persons as took under the will. The court places its decision mainly upon the ground, that the deed was without the most remote reference to the will of Daniel W. Hart, or anything by which it could be contended that his niece, Mrs. Dearing, was the grantee intended.

The case of *Clinton* v. *Hope Insurance Co., supra,* was an action upon a fire insurance policy, insuring the "estate of Daniel Ross." The property insured was destroyed by fire pending negotiations for the sale and conveyance of it by the parties who owned it when the policy was issued, but after the vendee had gone into possession. After the fire a new contract was entered into between the same parties, the vendee purchasing the real estate and claims for insurance, and taking a deed. It was held, that the vendee by the first contract acquired no title to the property, and that by his second contract the claims to cover the amount insured were not extinguished; that the destruction of the property which fixed the liability of insurance, at the same time discharged the vendee from his obligation to purchase; and therefore, that the insurers could not be subrogated to that obligation to the extent of their liability for insurance. In the body of the opinion the court says: "The person or persons to be insured are not named in the policy, nor is this essential to the validity of the contract of insurance."

"If the name of the person for whose benefit the insurance is obtained does not appear upon the face of the policy, or if the designations used are applicable to several persons, or if the description of the assured is imperfect or ambiguous, so that it cannot be understood without explanation, extrinsic evidence may be resorted to, to ascertain the meaning of the

contract; and when thus ascertained, it will be held to apply
to the interests intended to be covered by it and they will be
deemed to be comprehended within it who were in the mind of
the parties when the contract was made. (1 Phil. on Ins. 163;
*Colpoys* v. *Colpoys,* Jacob, 451; *Burrows* v. *Turner,* 24 Wend.
277; *Davis* v. *Boardman,* 12 Mass. 30; *Newson's Adm'rs.* v.
*Douglass,* 7 H. & John., 417)."

We do not say, or mean to be understood as saying that the
rule applicable in an action upon a policy of insurance laid
down in the New York case, is applicable to the full extent in
cases involving the construction of wills; but if a policy of in-
surance in favor of the "estate" of one named is not void for
uncertainty, and may be rendered certain by extrinsic evidence,
why on like principle, may not extrinsic evidence be employed
to render certain who was in the mind of the testator when em-
ploying similar language to describe the object or objects of her
bounty? Of course there is a distinction to be recognized be-
tween the words of a will and of a contract *inter partes.* If,
however, the object of a testator's bounty can by extrinsic evi-
dence, and without doing violence to the language of the will,
be definitely ascertained, what reason can be assigned against
its admission? The New York case was cited by counsel for
appellees, for the proposition that "the estate of R.", in the
policy, did not have a definite legal significance, "meaning R's
administrator."

Though the language of the will here is not as clear as might
be desired, in manifesting the intentions of the testatrix, yet
we think it bears evidence on its face of a clear intent and pur-
pose, on the part of the testatrix, that the plaintiff, her son,
for whom the father in his will, had made an elaborate "spend-
thrift" provision, well known to and understood by her when she
made her will, should take nothing under her will, except as
specifically provided. In making the small provision for him,
and in attempting to dispose of the bulk of her estate, so de-
rived, to religious and charitable uses, she evidently intended
that he should look for his main support to the will of his
father, and the estate devised to him therein, and subject to the
terms and conditions thereof, wisely made. Therefore, the
main provisions of her will having failed because of uncertainty,

justice demands, that we should give such construction to the residuary clause thereof as will clearly effectuate the intent and purpose of the testatrix, if we can find legal justification for so doing. It is just and right, her bequests having failed for uncertainty, that the money covered by the void bequests, should by the residuary clause of her will, go back into the estate of her husband to be disposed of as his will had directed.

We are of opinion, therefore, taking the will of the testatrix by its four corners, that the words of the residuary clause, "let it be return to the estate of C. W. Arnett," means to the executors of the will of said C. W. Arnett, deceased, to go and be distributed, as by the terms of his will, his estate is directed to be distributed to his legatees. We think the principles of the authorities cited justify this conclusion.

Our opinion, therefore, is to reverse so much of the decree appealed from as adjudges said residuary clause invalid; and gives decree in favor of P. B. Ogden and others, trustees of the Baptist Church, for $10,000, as provided therein. In other particulars the decree will be affirmed.

*Affirmed in part. Reversed in part.*

WILLIAMS, JUDGE, *(dissenting):*

I dissent for the reason that I believe the residuary clause is void for uncertainty. Testatrix bequeathed the residue of her estate to the "estate" of her husband, who was then dead. An *estate* is not a person, either natural or artificial; nor can the word be properly construed, in my opinion, to mean a person. It means the quality of interest in property, or property rights. It is a thing as much incapable of taking and holding property, either by deed or will, as it is of taking by inheritance, or of disposing of property. What right has the court to say that testatrix meant her husband's executors, by the use of the word *estate,* and that they were to take, not absolutely, but in their official or representative capacity? None, whatever, as I see it. Testatrix made no reference to her husband's will, and yet the majority opinion holds that she disposed of her property in the manner in which her husband had disposed of his. But suppose he had not made a will, and the bequest had been made, as it is now, to his estate, would the word *estate*

then have meant his administrator, or would it have meant
his distributees? Would it have been liable for the husband's
debts? Unquestionably it would have been liable for testatrix's
own debts, but would it have become liable for the debts of
both estates? The fact that testatrix acquired the property
by renunciation of her husband's will can not aid in the in-
terpretation of her will. The property was then her own, and
no longer subject to her husband's will. It was as if he had
never owned it. If she had bequeathed it to her husband's ex-
ecutors, to be administered by them according to the terms of
her husband's will, it would have been a valid will, such as this
Court, by its majority opinion, has made for her. But, she not
having referred to her husband's will herself, what right has
the Court to do so, in order to supply something vitally im-
portant to give effect to her own will? There is no latent am-
biguity, to give the right to resort to extrinsic evidence to de-
termine the meaning of her words. The will must be deter-
mined from the words she used; it can not be inferred from ex-
trinsic circumstances. It is not possible to interpret her will
without reading her husband's will in connection with it, and
his will is no part of her will. I think the unconscious desire
of the majority of the Court to do what they have conceived to
be absolute justice in this particular case, by preventing an im-
provident and reckless son from squandering the property which
his father's frugality and business sagacity had enabled him
to accumulate, has led them farther into the realm of specula-
tion than the well established rules of law governing the inter-
pretation of wills will warrant. They have adopted the will
of the husband as the will of his wife, a thing which she did
not do herself.