# CHARLESTON.

FRANK V. LANGFITT *et als.* v. JULIETTE C. LANGFITT.
*Widow, etc.*

(No. 6620)

Submitted January 14, 1930.    Decided January 21, 1930.

*Jackson V. Blair* and *S. A. Powell,* for plaintiff in error.
*W. Scott Stewart, A. F. McCue* and *Steptoe & Johnson,* for defendants in error.

HATCHER, JUDGE:

S. W. Langfitt was operated upon for toxic goiter on January 11, 1928, dying therefrom two days later.    The necessity of an operation had been determined about December 12, 1927.    On December 22, 1927, he handed to his brother, Dr. Frank V. Langfitt, the following letter dated December 19, 1927:

"Dear Frank:
If I should fail to pull through this operation I

want you to sell the Columbia Carbon Stock which is worth about $50000 and the Bonds which I have in the Union Bank worth about $25000 and divide the proceeds equally among my brothers and Sisters and Mamie Morrison.

It is necessary that this arrangement be kept a profound secret among the family.

The above items should not be appraised with my estate as they are not a part of it.

Yours<br>S. W. LANGFITT.''·

The circuit court found that the letter was the will of the decedent and as such ordered it to be probated. That finding is contested here by his widow who had successfully opposed its probate before the county court.

The appellant concedes that a valid will may be in the form of a letter, (see *Roberts* v. *Coleman,* 37 W. Va. 143, 151), and that the lower court was justified in finding from the evidence that the deceased was of testamentary capacity and that the letter was written wholly by him. (See Code, Chaper 77, section 3.) Her only contention is that the letter is not a testamentary paper. She raises the following points against an *animus testandi:*

"(a) The said letter is not testamentary in form, and does not contain a single testamentary word, phrase or expression;

(b) It does not purport to dispose of all the writer's property;

(c) It contains no residuary clause;

(d) It does not appoint an executor;

(e) It was not intended for publication by probate or otherwise, as is evident from the following statement therein: 'It is necessary that this arrangement be kept a profound secret among the family':

(f) The direction in the letter that the items therein named should not be appraised with the estate of the writer, 'as they are not a part of it', conclusively shows that said letter was not intended to operate as a will; and,

(g) The writer on February 19, 1924, having signed a formal typewritten will in which after

> making a specific bequest of $10,000.00 he bequeathed the balance of his estate to the same persons who are named as beneficiaries of the property mentioned in said letter, it is unreasonable to assume that he intended to make two wills disposing of the same property to the same beneficiaries."

We will refer to each point as lettered.

(a) The letter is not testamentary in form, but we are of opinion that the phrase "if I should fail to pull through this operation, I want you to sell", etc., denotes testamentary intent. In England, as early as 1755, a letter containing the informal phrase "if any misfortune should happen to me" was held to be "clearly testamentary". See *Repington* v. *Holland*, 2 Lee 106, 161 E. R. 280. A number of American decisions in which like expressions have been held to indicate testamentary intent are collected in *Re Tinsley*, 187 Iowa 23, 32-3, of which the court said: "Many persons shrink from the bald mention of their own possible demise, and, when the disagreeable subject must be spoken of, make use of some figure of speech or euphemistic phrase which suggests the idea in less repulsive form. In ordinary parlance, it is by no means unusual for a person, in stating his wishes or giving directions concerning what shall be done in the event of his death, to preface his statement with the expression, 'If anything happens to me'; and in such case, no one misunderstands or doubts the meaning of the phrase. Words of this general character have often been considered by the courts, and held sufficient to indicate a testamentary intent." *Re Tinsley* is also reported in 174 N. W. 4, and in 11 A. L. R. 826.

(b, c and d) It is not essential to the validity of a will that it dispose of all of the testator's estate, or name an executor, or contain a residuary clause. 28 R. C. L., p. 109, sec. 61; 40 Cyc., p. 1078-9, secs. 5 and 6. In justice to counsel it should be stated that they do not insist that any single one of these items is requisite, but contend that the absence of all of them from the paper tends to show that the intention of the maker was not testamentary. It will appear later that a testamentary intention depends in no wise on these items.

(e and f) A testamentary intent being clearly demonstrated in the paper, that intent is not overthrown by the expressions referred to under these headings, even if they be inconsistent with such intent. ''Where the general intent of the testator is clear, that general intent must prevail over the particular or special intent expressed in a part of the will, where it is impracticable from the language used to give effect to both the general and particular or special intent.'' *Houser* v. *Ruffner,* 18 W. Va. 244. *Bell's Admr.* v. *Humphrey,* 8 W. Va. 1, 18; *Bartlett* v. *Patton,* 33 W. Va. 71, 80; 1 Harrison on Wills, sec. 193 (2); 1 Page on Wills, 2nd Ed., sec. 812. The expressions under these headings merely indicate that the writer was not familiar with the law affecting the probate of wills and the disposal of property thereunder, or did not understand that he was making a will. The *animus testandi* of the writer does not depend on either contingency. Misconception of the law and of the relation of the stock and bonds to the estate could not take away from the letter its testamentary operation. 1 Schouler on Wills, Exs. and Admrs., 5th Ed., sec. 276. Long before the Revolution it was not considered necessary in England that the testator should intend to execute or realize that he had executed a will. See 28 Halsbury (The Laws of England), p. 546, sec. 1079, and cases cited in note (p); 1 Lomax on Exs., p. 34, sec. 2. The Virginia court, following the English decisions, held in 1846, ''Nor is it necessary that the testator should intend to perform or be aware that he has performed a testamentary act.'' *Pollock* v. *Glassell,* 2 Gratt. 439, 455. The West Virginia court reiterated that principle in *Lauck* v. *Logan,* 45 W. Va. 251, 254, saying: ''No matter what its maker called the paper or believed it to be. What does it say? What is its effect in law? That is the question.'' This indeed is the law generally. See Page, *supra,* sec. 371; 1 Alexander, Comm. on Wills, sec. 46; 30 Am. and Eng. Ency. Law, 572. We see no reason to breast this full current of authority.

*Animus testandi* is not the purpose to make a will but to direct the posthumous disposition of property. ''The *animus testandi* * * * consists of an intention * * * to make some positive disposition of property * * * to take effect in no

way until the testator's death." Gardner on Wills, p. 15, sec. 4. *In re Johnson's Will,* 181 N. C. 303, 305, 106 S. E. 841, 842. "The essence of a testamentary disposition of property is that it is merely a declaration of the testator's intention as to what shall take place after his death." *Eaton* v. *Blood,* 201 Iowa 834, 839, 208 N. W. 508, 44 A. L. R. 1516. *Pollock* v. *Glassell, supra; Roberts* v. *Coleman, supra; Lauck* v. *Logan, supra;* Harrison, *supra,* sec. 102 (3); Schouler, *supra,* sec. 274; 1 Jarman on Wills, 6th Ed. 33; 40 Cyc., p. 1084, sec. 11; 28 R. C. L. 110.

(g) The typewritten will was invalid because not witnessed and attested in manner prescribed by the statute. (Code, Chapter 77, section 3.) It was written in 1924 and differed materially in terms from the testamentary letter. In the former the testator bequeathed $10,000.00 to the petitioner and gave the balance of his estate to his brothers and sisters and Mamie Morrison (or such as should survive him). In the latter he bequeathed the proceeds of certain stock and bonds to his brothers and sisters and Mamie Morrison and is intestate as to the remainder of his estate. A comparison of the two papers fails to sustain the petitioner's charge that the two instruments dispose of "the same property to the same beneficiaries". It is possible that the ultimate effect of both papers might be approximately the same, but if so the effect is reached by different routes. However that may be, changes of one kind or another in testaments are so frequent that a former will, of itself, does not even raise a question as to the validity of a later and different disposition.

The circuit court refused to probate the typewritten will. This action is alleged as cross-error on the ground that the statute does not specify that the writing shall be manual, there is evidence from which the inference arises that the maker typed the will himself, and it is therefore wholly written by him within the statute. Irrespective of what merit the contention might have if the actual typing by the maker were proved, we cannot consider the point seriously on a *mere inference* that he typed it.

The decree of the circuit court is accordingly affirmed.

*Affirmed.*