THE UNION NATIONAL BANK OF CLARKSBURG,

AS EXECUTOR, *etc.*

*v.*

CARL JUNIOR NUZUM

(No. 14579)

Decided July 7, 1981.

*Steptoe & Johnson, Anne R. Williams* and *Justin L. Henderson* for Union National Bank.

No appearance for appellants-appellees Carl Junior Nuzum, et al.

NEELY, JUSTICE:

This is an appeal from a declaratory judgment action brought by the Union National Bank of Clarksburg, as executor and testamentary trustee of the will of Hannah L. Hood, deceased, for construction of a will. The defendants below are trustees of the First Baptist Church of Shinnston and the Pastor of that Church. Both the plaintiff and the defendants below are appellants in this Court and all parties seek the same relief, namely a construction of Miss Hood's will which permits the bank to pay all of the income from the trust to the Church trustees, for general church purposes, every year.

Hannah L. Hood died on 17 March 1976 leaving a holographic will dated 15 November 1957 accompanied by

a codicil dated 14 November 1963. The part of her will relevant to the case before us provided:

> The remainder of the estate including bonds, real estate, etc. is to be converted into a Hood Memorial Trust Fund, for the upkeep of the First Baptist Church of Shinnston. This fund is to be established at the Union National Bank of Clarksburg, West Virginia. The donor of the above property requests that it be disposed of in a wise and sensible manner, and gradually added to the trust fund.

The Union National Bank of Clarksburg was designated both executor and trustee; it sought court guidance in interpreting the phrase "for the upkeep of the First Baptist Church of Shinnston." The Circuit Court of Harrison County concluded that use of the proceeds of the trust was limited to:

> ... perpetually keep up and maintain the buildings, equipment and property of the Church, including the main church building, parsonage, christian education building, parking lot, grounds, lawns and also the furniture and other personal property in a good state of repair and to replace any or all of the same as it may become necessary to do from time to time, consistent with the customary and usual good business practice that would be exercised by a prudent businessman owning the same property. . . .
> (Circuit Court opinion)

The court also found that the proceeds could be used for light, heat, cooling and water for the buildings.

The difficulty which the parties have in living with the circuit court's construction of the will is that the First Baptist Church of Shinnston owns property measuring only 121-1/2 feet by 120 feet, upon which is located the church itself, the parsonage, an educational building, and a garage and parking lot. As of 18 July 1978 the net value of the assets in Miss Hood's testamentary trust amounted to $812,682.21 which represented a net growth plus income since her death of approximately $195,684.87. After all, there is only so much "upkeep" required of land and

buildings of the proportion currently occupied by the First Baptist Church. It is unlikely, therefore, that all of the income from this trust can be used in a prudent manner every year for the purposes to which it was limited by the ruling of the circuit court. As any eighth-grade student of compound interest can readily discern, as unused income is added to the corpus of this trust, the corpus is likely to expand in the next score of years geometrically.

## I

At the outset it is worth noting that Miss Hood wrote a competent holographic will. However the instrument does not demonstrate that any enormous thought went into her determination of either how this money should be spent or how the trust should be administered. She obviously did not consult with legal counsel, and we can reasonably infer that she was entirely unmindful of most of the tax implications attendant upon the creation of a private foundation. It is difficult for us to conclude that Miss Hood intended that vast sums of money should be accumulated in perpetuity simply because the Church cannot efficiently use all of the income for "upkeep."

Congress, in enacting the Tax Reform Act of 1969, sought *inter alia* to regulate and control the abuses of private, tax-exempt charitable foundations. Under previous tax law, private foundations had the unfettered right to accumulate income, tax free, and as a result, could have the ability to exercise enormous influence in the overall economy. Congress recognized that if it did not act to mitigate this wealth building capacity, such foundations eventually might own or exercise inordinate control over the productive resources of the United States. Consequently, Congress enacted laws which define private foundations and which prohibit the accumulation of income. *Internal Revenue Code of 1954*, §§ 508(e), 509, and 4942. In order to force distribution of income, statutes were enacted which levied penalty taxes on accumulated income. An initial 15% tax is levied on accumulated income, and if the accumulation is not disbursed, a subsequent 100% tax penalty is imposed on the remaining undistributed income. *Internal Revenue Code of 1954*, § 4942.

Furthermore, unless the governing instrument, specifically the will or trust agreement, expressly mandates that the trustee comply with the requirement that all net income be distributed, the private foundation will not be deemed tax-exempt and will be subject to tax on all of its net income. *Internal Revenue Code of 1954*, § 508(e). This tax is an addition to and not in lieu of penalty tax established by § 4942.

While Congress intended to stop the unfettered accumulation of income by private foundations, it recognized that, due to the very technical, and indeed arcane nature of its rules and regulations, many governing instruments would not contain the requisite language and, therefore, might be inadvertently subject to a very stringent and ultimately confiscatory tax. This obviously is the case with regard to Miss Hood's testamentary trust. To cure this problem it was provided by regulation that the governing instrument will be considered in conformity with the requirements of *Internal Revenue Code* § 508(e) "if valid provisions of State law have been enacted which (i) Require it to act or refrain from acting so as not to subject the foundation to the taxes imposed by Section . . . 4942. . .; or (ii) Treat the required provisions as contained in the governing instrument." Treas. Reg. § 1.508-3(d) (1) (1972).

To satisfy the last cited Revenue Regulation the West Virginia Legislature enacted *W. Va. Code*, 35-2-9 [1971] which provides in pertinent part as follows:

> Every trust, receiving a gift, grant, devise or bequest, which is deemed to be a private foundation as defined in section 509 of the Internal Revenue Code of 1954, unless its governing instrument expressly includes specific provisions to the contrary, shall distribute its income for each taxable year at such time and in such manner as not to subject such trust to tax under section 4942 of the Internal Revenue Code, . . . This subsection shall apply to any charitable trust established after December thirty-one, one thousand nine hundred sixty-nine, and to any charitable trust established before January one, one thousand nine hundred seventy, only for its taxable years

> beginning on and after January one, one thousand
> nine hundred seventy-two.

Simply stated, the Statute amends all West Virginia governing instruments which fail to contain the specific language of I.R.C. § 508(e) by imposing the annual disbursement provision so that the stringent and unintended penalty tax may be avoided.

After reviewing the *Internal Revenue Code* the Court concludes that the trust created by Miss Hood's will is, indeed, a private foundation potentially subject to the penalty tax. Since Miss Hood's will does not contain the specific provision required by *Code*, 35-2-9 [1971] to avoid the application of the statute to her private foundation, *Code*, 35-2-9 [1971] controls this case. Either the federal government will siphon off all of the money which cannot be used in a reasonably prudent fashion for the "upkeep" of the Church, or the Church must receive money each year which can be used in a reasonably prudent fashion only in part for "upkeep" and the rest of which must be spent on other Church related activities. Since at least Miss Hood designated the First Baptist Church of Shinnston as an object of her bounty while remaining entirely silent about her intentions to benefit the federal government, the Court believes that we can reasonably infer that of the two alternatives she would prefer the latter which benefits her named beneficiary, the Baptist Church. Consequently, in this case the statute obviously furthers the intent of the testator.

## II

In construing testamentary trusts the cynosure for any court must always be the intention of the grantor. *Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977). After Miss Hood executed her will, the federal tax law was amended in such a way as to cause a substantial part of this trust to fail. Accordingly we find this a fit occasion to apply the doctrine of *cy pres* as authorized by *W. Va. Code*, 35-2-2 [1931] in order to save the income for the object of Miss Hood's bounty. The doctrine of *cy pres* is an equitable remedy employed when the terms

of a charitable trust become illegal, impossible or impractical to fulfill. Under this doctrine a court may direct the trust funds be expanded in a charitable manner *cy pres* (as near) to the donor's intent as possible. 3 A. Scott, *Trusts* § 399 (3rd ed. 1967).

Consequently we reverse the Circuit Court of Harrison County and hold that the appellant Union National Bank as trustee under Miss Hood's will should pay all of the income from the trust to the First Baptist Church of Shinnston annually, giving priority to all needs for "upkeep" including those elements enumerated in the circuit court's order to assure that the physical plant remains in an excellent state of repair. The trustee is obligated to determine that all of the "upkeep" needs of the Church have been met before any of the income from this trust may be used for other Church purposes. Once all of the "upkeep" expenses of the Church have been met, the remainder of the annual income may be used by the trustees for any and all purposes which appear to serve the needs of the Church and its congregation. Since Miss Hood's will is silent with regard to any other priorities the Court sees no reason to attempt to set any.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Harrison County is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*