298 S.E.2d 456

**In re the ESTATE OF C.J. TEUBERT, Deceased.**

**No. 15546.**

Supreme Court of Appeals of West Virginia.

Dec. 1, 1982.

McHugh, J., filed dissenting statement.

Menis E. Ketchum, Greene, Ketchum, Mills, Bailey & Tweel, Bliss L. Charles, Huntington, for Admrs.

James W. St. Clair, Marshall & St. Clair, Huntington, for Beneficiaries.

James Allen Colburn, Baer & Colburn, L.C., Huntington, for James H. & Alice Teubert Foundation, intervenor.

W. Merton Prunty, Huntington, for the Cabell-Wayne Ass'n of the Blind, Inc., intervenor.

MILLER, Chief Justice:

This case involves the validity of a holographic writing made by C.J. Teubert. Two primary questions are presented: (1) whether certain typewritten words render the entire will invalid, and (2) whether the will demonstrates a testamentary intent and an understandable dispositionary plan. The trial court held the will valid and we affirm.

Mr. Teubert died a bachelor with no close relatives. He was shown to be an extremely frugal and shrewd postal employee. During his lifetime he had accumulated assets of approximately three million dollars. He enjoyed good health until February 11, 1979, when he was struck by an automobile, and he died three days later at the age of 91.

Upon Teubert's death, the writing in question was found among his personal papers. [See Appendix A.] The writing was wholly in the deceased's handwriting, with the exception of several typewritten lines located near the top and to the left of the page, which read, "(Revolking [sic] all writings or wills heretofore made by C.J. Teubert) All this for TRUST DEPT., First-Huntington Nat'l.Bk. Huntington,W.Va." Above the typewritten portion was handwritten, "Last Will, Etc. 9/1/71," and below the typewriting was the remaining handwritten portion which began "Pay just debts & funeral Ex."

The writing devised certain real property to the Jehovah's Witnesses, directions for the creation of the "James H. & Alice Teubert Foundation," and directions to the Foundation as to disbursements. The writing was signed at the bottom by the deceased, and one portion relating to free rent for certain tenants of the deceased was lined off and marked out with X's.

Beside the marked-out provision was written "Void" and the deceased's signature.

The Cabell County Commission refused to probate the writing as the Last Will & Testament of the deceased, and also refused to probate a separate unsigned codicil. The proponents of the will appealed to the Circuit Court of Cabell County, and the court, sitting without a jury, held that the will was a valid holographic will, that the typewriting on the will was surplusage, and that the writing would be admitted to probate. The appellants, the heirs-at-law of C.J. Teubert, appealed.

I. The Validity of the Holographic Will

A. Wholly In The Handwriting

W.Va.Code, 41-1-3,[1] provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent. In Syllabus Points 4 and 5 of *In Re: Estate of Briggs*, 148 W.Va. 294, 134 S.E.2d 737 (1964), we elaborated on this third requirement as follows:

"4. In determining whether a writing in the form of a letter discloses an intent that it be operative as a holographic will, it is proper to consider whether the writing expresses merely an intent to make a will in the future; and also whether the language relied upon as being testamentary in character constitutes the principal portion, or an important portion of the letter, or whether, on the contrary, such language is merely casual in nature.

"5. If a writing in the form of a letter appears on its face to be ambiguous in respect to the question of the presence or absence of a testamentary intent, extrinsic evidence may be admitted in relation to that question."

1. W.Va.Code, 41-1-3, states:
"No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the

*See also Rice v. Henderson*, 140 W.Va. 284, 83 S.E.2d 762 (1954); *Black v. Maxwell*, 131 W.Va. 247, 46 S.E.2d 804 (1948).

The appellants initially argue that the typewritten lines operate to void the will for not being "wholly in the handwriting of the testator," while the appellees assert the correctness of the lower court's ruling that the typewritten lines are "surplusage" and do not affect the will. Under the surplusage theory, nonhandwritten material in a holographic will may be stricken with the remainder of the instrument being admitted to probate if the remaining provisions make sense standing alone. *See* 2 Bowe-Parker, *Page on Wills* § 20.5 at 288 (1960). This rule has been stated in *In re Lowrance's Will*, 199 N.C. 782, 785, 155 S.E. 876, 878 (1930):

"When all the words appearing on a paper in the handwriting of the deceased person are sufficient ... to constitute a last will and testament, the mere fact that other words appear thereon, not in such handwriting, but not essential to the meaning of the words in such handwriting, cannot be held to defeat the intention of the deceased, otherwise clearly expressed, that such paperwriting is and shall be his last will and testament.... The words in print appearing on the sheets of paper propounded in the instant case, are surplusage."

*See also Pounds v. Litaker*, 235 N.C. 746, 747-48, 71 S.E.2d 39, 40 (1952); *In Re Will of Parsons*, 207 N.C. 584, 587, 178 S.E. 78, 80 (1935).

The Virginia Supreme Court has interpreted its holographic will statute, which also requires that such a will be "wholly in the handwriting of the testator," and has determined that the law is satisfied if the handwritten part, without the nonhandwritten part, is "complete and entire in itself." *Gooch v. Gooch*, 134 Va. 21, 29, 113 S.E. 873, 876 (1922). *See also Bell v. Timmins*,

handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary."

190 Va. 648, 58 S.E.2d 55 (1950); *Moon v. Norvell,* 184 Va. 842, 36 S.E.2d 632 (1946). The Virginia court declined to find that "wholly" was used in its "absolute, utter and rigidly uncompromising sense." *Bell v. Timmins,* 190 W.Va. at 655, 58 S.E.2d at 59. In *Bell,* the court was confronted with a holographic will upon which a well-meaning friend of the testator had printed certain words to clarify the testator's hand-written language. The court concluded that the testator's language standing alone was sufficient to create a valid holographic will.

The surplusage rule has been adopted in a number of jurisdictions. *E.g., In Re Estate of Schuh,* 17 Ariz.App. 172, 496 P.2d 598 (1972); *In Re Estate of Morrison,* 55 Ariz. 504, 103 P.2d 669 (1940); *Estate of Black,* 30 Cal.3d 880, 641 P.2d 754, 181 Cal.Rptr. 222 (1982); *In Re Estate of Durlewanger,* 41 Cal.App.2d 750, 107 P.2d 477 (1940); *Fairweather v. Nord,* 388 S.W.2d 122 (Ky.1965); *Heirs of McMichael v. Bankston,* 24 La.Ann. 451 (1872); *Baker v. Brown,* 83 Miss. 793, 36 So. 539 (1903); *In Re Bennett's Estate,* 324 P.2d 862 (Okl. 1958); *In Re Estate of Jones,* 44 Tenn.App. 323, 314 S.W.2d 39 (1957); *Maul v. Williams,* 69 S.W.2d 1107 (Tex.Com.App. 1934); *Estate of Robinson,* 20 Wis.2d 626, 123 N.W.2d 515 (1963); 79 Am.Jur.2d *Wills* § 707 n. 84 (1975); Annot., 89 A.L.R.2d 1198, 1207–10 (1963).

■ The purpose behind statutory recognition of holographic wills is to enable those persons who are unable or unwilling to secure the assistance of counsel to make a valid will in their own handwriting. We have traditionally sought to uphold holographic wills, recognizing that often the testator who is a lay person does not use the most precise or artful language. Judicial support for a holographic will also rests on the familiar rule that the law favors testacy over intestacy. *Mason v. Mason,* 165 W.Va. 412, 268 S.E.2d 67 (1980); *National Bank of Commerce v. Wehrle,* 124 W.Va. 268, 20 S.E.2d 112 (1942). In light of these factors, we believe

that the surplusage rule is compatible with our law. We, therefore, hold that where a holographic will contains words not in the handwriting of the testator, such words may be stricken if the remaining portions of the will constitute a valid holographic will.

■ Accordingly, we examine the typewritten words in the Teubert instrument to determine if they are necessary to the meaning of the writing and whether, if they were struck, the remaining provisions would make a valid holographic will. The first statement, "(Revolking [sic] all writings or wills heretofore made by C.J.Teubert)," is unnecessary to the will. The very act of making a will revokes prior inconsistent wills, and it is unnecessary to affirmatively state that revocation. *Kearns v. Roush,* 106 W.Va. 663, 146 S.E. 729 (1929). The second remark, "All this for TRUST DEPT., First-Huntington Nat'l.Bk. Huntington,W.Va.," is also unnecessary. There is no requirement that a will be addressed to any person or entity in the sense of appointing an executor. *Langfitt v. Langfitt,* 108 W.Va. 466, 151 S.E. 715 (1930). Further, there is no reference to these words in any handwritten portion of the will. It is clear that the typewritten words are unnecessary to the meaning of the instrument and that the remaining provisions would make sense standing alone.[2] Therefore, the typewritten words in this will are surplusage and will not by their presence render the holographic will invalid because it is not wholly in the handwriting of the testator as required under W.Va.Code, 41–1–3.

## B. Testamentary Intent

■ As previously noted, in order for any will, whether holographic or otherwise, to stand, the testator must have had the requisite *animus testandi,* or testamentary intent, to make the will. *In Re: Estate of Briggs, supra; Rice v. Henderson, supra.* Generally, such intent is found in a will expressly, either by formal language ["I . . . hereby make, publish and declare

---

**2.** A different result might occur in a situation where the deleted words are a part of the testamentary pattern and that deletion would change

the form of the will. In the case at bar, the deleted words have no bearing on the testamentary pattern.

this to be my last will and testament," *Black v. Maxwell,* 131 W.Va. at 253, 46 S.E.2d at 808], or by informal language ["[I]f I should die ... you transfer both savings and checking accounts to my sister," *Grace v. Klein,* 150 W.Va. 513, 515, 147 S.E.2d 288, 290 (1966)]. It is settled law, however, that a valid will requires no particular form of words to show testamentary intent. In Syllabus Point 1 of *Runyon v. Mills,* 86 W.Va. 388, 103 S.E. 112 (1920), we said: "Technical words are not necessary in making testamentary disposition of property; any language which clearly indicates the testator's intention to dispose of his property to certain persons, either named or ascertainable, is sufficient." *See also In Re Kemp's Will,* 7 W.W.Harr. 514, 37 Del. 514, 186 A. 890 (1938); *In Re Estate of Dimmitt,* 141 Neb. 413, 3 N.W.2d 752 (1942); *Estate of Logan,* 489 Pa. 29, 413 A.2d 681 (1980); *Early v. Arnold,* 119 Va. 500, 89 S.E. 900 (1916); *cf. In Re: Estate of Briggs, supra* (noting the absence of any words disclosing testamentary intent in the writer's letter). Where the words of a will are ambiguous as to testamentary intent, extrinsic evidence is admissible to prove the testator's intent. *In Re: Estate of Briggs, supra; Rice v. Henderson, supra. See also Estate of Dotta,* 18 Cal.App.2d 763, 64 P.2d 741 (1937); *Boggess v. McGaughey,* 306 Ky. 319, 207 S.W.2d 766 (1948); *In Re Van Voast's Estate,* 127 Mont. 450, 266 P.2d 377 (1953); *Shiels v. Shiels,* 109 S.W.2d 1112 (Tex.Civ.App.1937).

Although the Teubert writing obviously lacks a full statement such as, "This is my will," there are some dispositive words demonstrating an intent to make a will. The paper is headed by the words "Last Will, Etc." and "Pay just debts & funeral Ex.," which indicate, to some extent, testamentary intent. Admittedly, these words are not entirely inconsistent with the appellants' theory that the writing represents notes for a will. However, these words, when viewed in combination with the testator's signature at the end, his signature on the voided section, and his dating of the paper, give some formal indicia of testamentary intent sufficient to permit the introduction of extrinsic evidence.

The most significant piece of extrinsic evidence in the record that the testator intended to make a will is a codicil, written by the testator while in the hospital just prior to his death. It is unsigned and therefore inoperative, but it is still admissible evidence on the intent issue. The testator began this codicil with the words, "ADD to Last Will Etc. of C.J. Teubert 9–1–71." The codicil demonstrates that Teubert thought of the writing dated September 1, 1971, as his will, and he had attached sufficient importance to the writing to remember its precise date. Moreover, this conclusion was supported by the testimony of George Starr, who testified that three days before Teubert died, Teubert stated that he had previously made a will and there were some changes he wanted to make to it. Such a desire to change the will would not affect the validity of the will, as a will is not invalid for want of testamentary intent because the testator intended to make changes or execute another will. *See Richberg v. Robbins,* 33 Tenn.App. 66, 228 S.W.2d 1019 (1950); *La Rue v. Lee,* 63 W.Va. 388, 60 S.E. 388 (1908).

Admittedly, the extrinsic evidence is not without conflict. There was testimony by a trust officer of the First Huntington National Bank that about seven years before Teubert died they had discussed his will, and that the trust officer had told Teubert to go home and make notes for his will. The trust officer further testified that several times during the years thereafter, Teubert would remark to the trust officer that he wanted the bank to pay for having his will drawn up, and that the bank had better "get busy and get my estate." While this testimony would support the appellants' contention that the writing was the notes suggested by the trust officer, the testator's remarks were not inconsistent with the theory that he believed that he had written, dated, and signed a fully operative will, but would like for the bank to create for him a more formal will, if it would do so free of charge.

Some of the evidence going to the testator's intent is ambiguous, and little help can be attained from reciting each fact individually. For example, the will was written on the back of a stockholder's letter addressed to the deceased, which is consistent with both the appellants' theory that the careless choice of paper represents notes for a will, and appellees' argument that it is compatible with the action of a frugal man such as Teubert was proved to be. The fact that the will was eight years old when Teubert died could indicate lack of intent because the writer never bothered to have it formalized. On the other hand, the same fact could show his confidence in the effectiveness of the handwritten instrument.

In the final analysis, we are constrained to hold in accordance with our traditional rule that "[t]he findings of fact of a trial court are entitled to peculiar weight upon appeal and will not be reversed unless they are plainly wrong." Syllabus Point 3, *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980). *See also Lewis v. Dils Motor Company*, 148 W.Va. 515, 135 S.E.2d 597 (1964); W.Va.R.C.P. 52(a). We do not believe the trial court's findings as to testamentary intent are clearly wrong.

## II. Sufficiency of Testamentary Disposition

■ The appellants' argument that the writing represents mere notes to make a will gives rise to the question of whether there is a sufficiently clear testamentary plan. It is generally recognized that even though a will is sufficient in its formal prerequisites, it may fail if its terms are too vague and uncertain to enforce. The modern application of this principle is given in 79 Am.Jur.2d *Wills* § 37 at 298 (1975):

"The modern tendency, however, is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not, as it is sometimes put, to repose on the easy pillow of saying that the whole is void for uncertainty. Sound principle declares that a will is entitled to probate even though the obscurity of its phrasing may prevent it from constituting an effective testamentary disposition. An instrument does not lack testamentary character because of the failure of the testator to indicate specifically the amount of the bequest made; it is sufficient in this respect that the bequest is capable of being made certain by the use of the means referred to in the instrument."

We have not had occasion to discuss this rule at any length although in *Hunt v. Furman*, 132 W.Va. 706, 711, 52 S.E.2d 816, 818 (1949), we said: "A valid disposition of personal property requires a definite subject and object, and if either is uncertain, the defect is fatal." *Arnett v. Fairmont Trust Co.*, 70 W.Va. 296, 73 S.E. 930 (1912); *Pack v. Shanklin*, 43 W.Va. 304, 27 S.E. 389 (1897). In this inquiry, we are aided by the rule previously mentioned that the law favors testacy over intestacy. *Mason v. Mason, supra; National Bank of Commerce v. Wehrle, supra.*

■ Admittedly, the testator's handwriting and occasional interlineations and cryptic comments tend at first reading to be rather vague. However, if a close scrutiny is given to the writing, two fundamental dispositive patterns are discernible. After the direction to pay just debts and funeral expenses, there is the devise of real estate located at "619—16 St & 7 Ave" to the "Jehovah Witness (East & West Div.)." This description would appear to sufficiently identify the property. *Truslow v. Ball*, 166 Va. 608, 186 S.E. 71 (1936). The same is true of the direction to sell the Plateau Eastwood Lots and the property at 570—7th Avenue.

In addition to disposing of the foregoing specific items of real property, the testator in the upper righthand portion of the writing made cash bequests as follows: (1) "$100.00 each year as special prize [to] Carl 'Duke' Ridgely Golf Tournament;" and (2) "$100.00 to each of Little League B. Ball clubs (each year) for bats, balls, uniforms, Etc." There may be some ambiguity as to how these bequests are to be paid. However, these items appear under the lan-

guage "(The Foundation to be perpetual in nature.)."

Much of the ambiguity as to the payment of these cash bequests is clarified by the second dispositive portion of the writing, where the testator creates the "James H. & Alice Teubert Foundation to receive Bal. money in bank, all stocks and money with Bache & Co. and Merrill Lynch, Pierce, Fenner & Smith, Inc. together with all other things of value." Thus, it is clear that after the transfer of the real estate to the Jehovah's Witnesses, the money from the sale of the remaining assets will pass to the Foundation.

We need not detail in depth the testator's specific directions for the Foundation's payments except to state that they are to both named individuals and charitable organizations and represent extremely small amounts of money in comparison to the estate's total value of approximately three million dollars. The more significant fact is that the residuary bequest is "Residue to aid the blind only." Of key legal significance is that the residuary bequest causes the Foundation to be primarily a charitable trust and consequently its dispositive pattern is aided by the doctrine of *cy pres*, which is embodied in W.Va.Code, 35–2–2.[3]

Although some of the specific monetary bequests directed to be disbursed by the Foundation are to private individuals, this will not necessarily defeat an otherwise valid charitable trust. An excellent analysis of this area of the law is contained in *Rice v. Morris*, 541 S.W.2d 627, 631 (Tex.Civ.App.1976), where the court states:

"A 'mixed trust' is usually defined as one which possesses private and public elements and is partly charitable and partly for the benefit of private individuals or non-charitable objects. It is not objectionable to have a mixed trust as such. Bogert, Law of Trusts, § 65 (Fifth Edition 1973). The objectionable characteristic of a mixed trust having both charitable and non-charitable purposes, is not due to the commingling of purposes. The objectionable characteristic occurs when the charitable portion of the trust is invalid for some reason or another, or the private portion of the trust is invalid for some reason or another, and the two trusts cannot be separated and individually enforced. If a mixed indivisible trust satisfies all of the requirements for a valid charitable trust and all of the requirements of a valid private trust, there is no good reason why the courts should not carry out the intentions of the settlor by enforcing the trust. Bogert, Law of Trusts, § 65 (Fifth Edition 1973); 2A Bogert, Trusts and Trustees, § 372, p. 85. See also *Moskowitz v. Federman*, 72 Ohio App. 149, 51 N.E.2d 48 (1943)."

In the present case, the private monetary bequests directed to be made by the Foundation are definite as to the persons and amounts to be paid. They constitute no

3. W.Va.Code, 35–2–2, provides:
"No conveyance, devise, dedication, gift, grant or bequest hereafter made for any of the uses set forth in the preceding section [§ 35–2–1] shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust annexed to such conveyance, devise, dedication, gift, grant, or bequest, or for any failure to name or appoint a trustee for the execution of the trust; but such conveyance, devise, dedication, gift, grant, or bequest shall be valid; and whenever the objects of any such trust shall be undefined, or be so uncertain as not to admit of specific enforcement, or literal execution, or no trustee shall have been named or appointed to execute the trust, or there is no trustee or trustees in existence having authority to take the property, a suit in chancery may be instituted, by any party interested, in the circuit court of the county where the trust subject, or any part thereof is, in the case of a conveyance, dedication, gift or grant, or in which the will was probated, in the case of a devise or bequest, for the appointment or designation of a trustee or trustees to execute the trust, or for the designation of the beneficiaries in, or the objects of, any such trust, or, where such trust does not admit of specific enforcement or literal execution, for the carrying into effect as near as may be the intent and purposes of the person creating such trust; and thereupon such court shall have full power to appoint or designate a trustee or trustees to execute the trust, or to designate the beneficiaries in, or the objects of, any such trust, or where such trust does not admit of specific enforcement or literal execution, to carry into effect as near as may be the intent and purposes of the person creating such trust."

impediment to the remaining portion of the trust, which specifies small cash bequests to charities and churches and directs the remainder to the aid of the blind. We briefly discussed the concept of a "mixed trust" in *Goetz v. Old National Bank of Martinsburg,* 140 W.Va. 422, 435, 84 S.E.2d 759, 769 (1954), and concluded that the *Goetz* trust must fail because "there is no method of apportionment as between the charitable purposes and the scientific and other trust for profitable purposes mentioned by testatrix." However, the *Goetz* case is not controlling here because there is an identifiable separation between the private and charitable portions of the Teubert trust.[4]

The fact that the residuary portion is directed only "to aid the blind" does not by its generality create an insufficient testamentary disposition. In *Hays v. Harris,* 73 W.Va. 17, 80 S.E. 827 (1913), the Court traced the history of the English doctrine of charitable uses known as the doctrine of *cy pres* into Virginia and its early statutory repeal in that state. *Hays* also pointed to its partial statutory rebirth in Virginia in the Code of 1849 which found its way into our statute, and its present counterpart in W.Va.Code, 35–2–1. *Hays* utilized this statute to sustain a testamentary bequest to trustees to construct a hospital for the purpose of treating "the sick poor ... without charge or with as little expense as possible." 73 W.Va. at 19, 80 S.E. at 828.

At issue in *Hays* was whether the object of the trust, treating "the sick poor," was a charitable purpose and whether the designation "sick poor" was too general to identify a class of recipients. *Hays* concluded that the statute used the term "benevolent" and that benevolent "is more comprehensive and wider in its scope of meaning than the word 'charitable,' and may include what are not recognized as charities in the old English law." 73 W.Va. at 23, 80 S.E. at 830.

*Hays* also recognized the rather uniform rule that there need be no identifiable individual recipients of a charitable or benevolent trust and phrased the matter as follows: "It is necessary only that the object of a benevolent trust should be certain. To designate the individuals who are intended to be benefited would be to destroy its character as a charitable trust. Uncertainty as to the individual beneficiaries is a necessary characteristic of a charitable trust." 73 W.Va. at 23, 80 S.E. at 830. *See also* Syllabus Point 1, *Mercantile Banking & Trust Co. v. Showacre,* 102 W.Va. 260, 135 S.E. 9 (1926).

*Hays* then proceeded to review a number of cases where the courts had sustained a charitable bequest although the designation of the beneficiaries was quite general—such as we have in the present case with the phrase "[r]esidue to aid the blind." Included in the cases reviewed by *Hays* was one involving a bequest " 'for the relief of the indigent *blind* and lame,' ... *Mayor of Philadelphia v. Elliott, et al. Ex'rs,* 3 Rawle (Pa.) 170." 73 W.Va. at 24–25, 80 S.E. at 831 (Emphasis added).

It should be noted that *Hays* was decided before the enactment of W.Va.Code, 35–2–2 (1931), which considerably broadened our statutory doctrine of *cy pres*[5] by declaring that: "No conveyance, devise, dedication, gift, grant or bequest ... [to a charitable trust] shall fail or be declared void for insufficient designation of the beneficiaries in, or the objects of, any trust ... or for

---

4. We also note that the private portion of the trust does not violate the rule against perpetuities. *Cf. Berry v. Union National Bank,* 164 W.Va. 258, 262 S.E.2d 766 (1980). Moreover, the charitable portion is exempt from the rule. *Mercantile Banking & Trust Co. v. Showacre,* 102 W.Va. 260, 135 S.E. 9 (1926).

5. It appears that our earlier cases have not considered whether the doctrine of *cy pres* could be judicially developed but have been content to rely on W.Va.Code, 35–2–1. Note, *The Cy Pres*

*Doctrine in West Virginia,* 58 W.Va.L.Rev. 169 (1956); Note, *Charitable Trusts,* 35 W.Va.L.Q. 370 (1929). Since the adoption of W.Va.Code, 35–2–2 (1931), the scope of statutory *cy pres* is fully compatible with the doctrine as judicially developed in other jurisdictions. *E.g., In re Estate of Thompson,* 414 A.2d 881 (Me.1980); *Howard Savings Institution of Newark v. Peep,* 34 N.J. 494, 170 A.2d 39 (1961); Bogert, *Trusts & Trustees,* § 433 (Rev.2d Ed. 1977); IV *Scott on Trusts* § 348.3 (1967); 15 Am.Jur.2d *Charities* § 158, *et seq.* (1976).

any failure to name or appoint a trustee."[6] In *Union National Bank of Clarksburg v. Nuzum,* 167 W.Va. 340, 280 S.E.2d 87 (1981), we broadly applied the doctrine under W.Va.Code, 35–2–2, to permit the trustees of a charitable trust to expend all of the trust's income for additional charitable purposes when it became evident that the income exceeded that needed for the trust's original purposes.

Consequently, we conclude that, under *Hays* and in view of the enactment of W.Va.Code, 35–2–2 (1931), the residual bequest "to aid the blind" is sufficient to make the bequest valid and thereby establish a dispositionary pattern sufficient to uphold the will.

For the foregoing reasons, we therefore affirm the judgment of the Circuit Court of Cabell County.

McHUGH, J., dissents on the basis that he believes the writing represents only notes to make a will.

Affirmed.

**6.** W.Va.Code, 35–2–2, *see* note 3, *supra,* for its full text, enables a circuit court on application of an interested party to "have full power to appoint or designate a trustee or trustees to execute the trust, or to designate the beneficiaries in, or the objects of, any such trust, or where such trust does not admit of specific enforcement or literal execution, to carry into effect as near as may be the intent and purposes of the person creating such trust." This procedure is not involved in the present case.

## APPENDIX A

Last Will, Etc. 9/1st
(Revoking all writings or wills
heretofore made by C.J.Taubert)

The "Foundation" to be
perpetual in nature.

All this for TRUST DEPT.,
First-Huntington Nat'l.Bk.
Huntington, W.Va.

100 — each year as special prize
cup Duke "Ridgely" half
100 — to each of Little League
Balls, uniforms, Etc.

Pay just debts & funeral Ex-

519 - 16 St. & 7 Ave Park Lot to Jehovah Witness (East &
Sell Place — Eastwood 2 Lots West 7½)
" 510 - 7 Ave. property.

Create James H. & Alice Taubert Foundation to receive
Bal. money in bank; all stocks with Bache
Merrill Lynch, Pierce, Fenner & Smith, Inc. together with
all other things of value.

Foundation to pay to: Bess Roby (cousin) 500. cash three 20 — Life
Mabel Prestce (cousin) 500. " " 20 — Life
Stuart Roby 500 " " 10 — Life
Lillian & Christofer (nee Boyce) 1000 " " 20. mo.
Rex Pyymies — 500 (10 — mo. 50 mo.)
Rainer Bright - 10 — mo. 50 mo. —
Am. Foundation for Blind 1000. (20. mo. 50 mo.)
Congregational Church (city) (100 yrs (in Dec) Figures) 1000.
Jehovah Witness (east & west jointly) 100 yr " 10 " 1000.
Emanuel United Methodist Church (city) 100 " " 10 - 1000.
Cammack Childs Center " " 10 " 1000.
Stella Fuller " " 10 " 1000.
Salvation Army — 10. mo. 50 months - 500.
Eileen Nicholls " " - 500.
Delores Hardner — — — —

Residue to aid the blind only.

(signed) C.J.Taubert