FERRIS v. NEVILLE.

1. WILL—WHAT CONSTITUTES.

An instrument, executed with the formalities required in the case of a will, certifying that "this is good to F. for $800, as payment for care and attendance rendered by her to me in my last sickness; this $800 is to be collected out of my estate after my death, providing, however, I die a bachelor,"—is a will, and not a mere acknowledgment of indebtedness, since it was not to take effect until the death of the subscriber, and was subject to be defeated by his marriage.

2. SAME—EXECUTION—INSTRUCTIONS.

The question whether a will was executed and witnessed as required by the statute, and as on its face it purported to be, held, to have been properly submitted to the jury.

Error to Bay; Maxwell, J. Submitted March 8, 1901. Decided July 10, 1901.

Rubie Ferris presented for probate an instrument claimed to be the last will and testament of Jacob E. Embody, deceased. The instrument was allowed in the probate court, and Albert D. Neville, as administrator of the estate of said deceased, and in his own right, appealed to the circuit. From a judgment for proponent, .contestant brings error. Affirmed.

*Porter & Haffey* ( *McDonell & Duffy,* of counsel ), for appellant.

*T. E. Webster* ( *James Van Kleeck,* of counsel ), for appellee.

LONG, J.   This is an appeal from an order of the probate court of Bay county admitting to probate a certain writing which is claimed to be the last will and testament of Jacob E. Embody, deceased, who died May 8, 1898. The paper reads as follows:

"STATE OF MICHIGAN, ⎱ ss.
       County of Bay.    ⎰

" *To Whom It May Concern:* This is good to Miss Rubie Ferris for eight hundred dollars, as payment for care and attendance rendered by her to me in my last sickness; this eight hundred dollars is to be collected out of my estate after my death, providing, however, I die a bachelor.

his

"JACOB E.   X   EMBODY.   [ L. S.]

mark.

" Signed and sealed in presence of
       " JAMES PETTERSON.
       " EDWIN U. HOVER.
" Dated at Lengsville, Bay county, Michigan, this 19th day of February, A. D. 1898."

There is no question but that the deceased died a bachelor.

The cause was tried in the circuit court before a jury on appeal, and a judgment entered on a verdict finding the instrument above set forth to be the last will and testament of Jacob E. Embody, deceased.   The administrator of the estate has appealed.   His counsel say in their brief that but two questions are raised, to wit:

"1. Does this paper constitute a will, even if properly executed and witnessed ?
" 2. Did the court err in the admission and exclusion of testimony which was offered showing that the will was properly executed and witnessed according to the statute, and was that question of fact properly submitted to the jury ?"

The proponent of the will called James Petterson as a witness. He testified that he came to the house of one Mr. Ferris, at Lengsville, on February 19, 1898; that he saw the deceased, Jacob E. Embody, upstairs in the house, and talked with him awhile, when deceased tapped on the window and called Edwin Hover, the other witness to the will, who came up; that the paper here claimed to be the will of Mr. Embody was then signed in his presence by Embody, and that he and Hover signed as witnesses to it at Mr. Embody's request; that the witnesses both signed at the request of Embody, and in his presence, and in the presence of each other; that Hover wrote the words, "Dated at Lengsville, Bay county, Michigan, this 19th day of February, A. D. 1898," at the request of Mr. Embody; that Embody then requested Hover to take the paper and keep it until he (testator) died or got better, and if he died it was to be given to Mr. Ferris, and if he lived it was to be returned to deceased.

Edwin U. Hover, the other witness to the paper, was called, and testified that he had known Mr. Embody, the testator, about a year; that it was his signature to the will; and that the date looked like his handwriting, but that he was not positive it was his handwriting. He further testified that he signed the paper at his home, near Unionville, about a year after it was dated (that is, about the 6th or 7th of March, 1899); that Mr. Ferris brought the paper to him and asked him to sign it; that Ferris told him that he wrote the body of it, but that Embody died so suddenly they did not get it quite finished, and that he (Ferris) knew it was all right, and he (witness) supposed it was all right, and signed it; that the other witness (Petterson) was not there, and Embody was not there. On his further examination the witness testified that, if he testified on the hearing in the probate court that he signed the paper in the presence of Petterson and at the request of Embody, it was false. He then stated: "I lied in the probate court because I was under the influence of liquor. * * * I was somewhat under the influence of liquor when I signed this paper."

The proponent introduced testimony tending to show that, while Mr. Embody was still living, Mr. Hover, the above witness, had this paper in his possession; that he showed it to one Otto Bruce, and at Embody's request read it over to Bruce; and that he showed it to Mr. Ferris' son Fred, and let him read it, and said he was going to give it to Mr. Ferris. The judge of probate of Bay county was called as a witness, and testified that Hover was called as a witness on the allowance of the will, and stated that he was passing the house where the deceased was at that time, and that the deceased beckoned to him to come up; that he went into an upper room of the house, and there were three parties present (that is, the two subscribing witnesses and the deceased); that the deceased presented him a paper and asked him to witness it; that the name of the testator had been signed to the paper; and that he then and there signed it at the request of the deceased. Other testimony was also given of like character. The witness Hover was recalled, and gave testimony tending to show that he never showed the paper to Fred Ferris or Otto Bruce.

Upon this and other testimony introduced in the case, the court charged the jury:

"Now, I charge you explicitly that unless this will was signed at the time that Petterson says he signed it, in the presence of the testator and in the presence of the two witnesses, it is void, and you will find against the will. Unless that will was signed by the two witnesses in the presence of the testator and in the presence of each other, the will is void, it never took effect, it never became a will; and if the testimony of the young man that it was carried down to Tuscola county long after its execution—If what the witness said was true, the will was never completed, because it must be completed during the lifetime of the testator.

"Now, that brings us to the second question. If the will was signed in the presence of these two witnesses and in the presence of the testator, and at his request, the will is valid and effectual. There is a question of law as to whether the instrument is a will or not, and it is a close

question.  My first impression was the same as my
brother McDonell's.  I thought it was a mere promise or
agreement to pay.  A subsequent partial examination
somewhat changed my views, and I charge you, as a
matter of law, that it is a will; that is, if it is proved to be
properly executed.  If it were a claim against the estate, it
would come in for its share of the money with the other
creditors, and might consume all the estate, and might be
of value to the amount of the whole face of it, unless the
debts exceed the whole value of the estate.  But, as a will,
it is subject to all the debts of the estate before the lega-
tee gets anything, and no injustice would be done if it is
allowed as a will or claim, providing it is honest and just.

" Now, in regard to the proof of this will:  You have
heard the testimony of Petterson.  He was on the stand
as a witness.  You saw how he behaved, and heard what
he had to say, and, no doubt, observed his method of giv-
ing his testimony.  If you believe Mr. Petterson, you
may find in favor of this will.  But, before you can find
in favor of the will, you must find that both Petterson and
Hover signed this will as witnesses at the time that Petter-
son says he signed it.  Now, in support of that view of
the case, this may be said:  The testimony of this boy
was given before the probate court some time ago.  There
he testified substantially the same as Petterson testified,
according to his own testimony and the testimony of Judge
Wright.  The events about which he spoke were more
recent in his recollection then than they are now, or will
be at any later day than that date.  I do not see in the
case ( it has not leaked out, at least ) what inducement or
temptation was held out to this boy to commit perjury at
that time, or to make a forgery by signing the will as a
witness, because it is a forgery to attest a will that is
false.  Now, you will consider that in regard to his testi-
mony.  He was living up there in that neighborhood; he
was well acquainted with, and near neighbor to, the parties
interested; and his name appears upon that instrument,
and he appeared before the probate court and testified to
it.  Now, so far there would seem nothing unusual about
him, or the evidence that he gave, or the things that he
did.  If anybody else had done it, it would be a very
natural thing to do.  But he says that he swore falsely
before the judge of probate; that he never witnessed the
will until the day before the 8th of March last,—the 7th of
March,—when Mr. Ferris and some one else came to him,

down in Fairgrove, and told him that he knew that the will or paper contained the last wishes of Mr. Embody, which he assented to, and thought there was no harm in signing it. Now, it is possible that the boy was innocent in signing that document, and that he was imposed upon or induced to sign it. His testimony in regard to the liquor that he drank you may consider, but it is very dangerous evidence for you to pay much attention to. He details exactly what happened immediately after that same time, and, so far as it casts a dark shadow on this transaction and seems to shed light on the other side, you will consider it with the utmost care, if you give it any credence whatever.

"He testifies that he signed it on the 7th of March. Judge Wright comes here and testifies that the paper was filed in his court on the 8th day of March, and that he saw it in the hands of Judge Webster two weeks, and maybe three weeks, before that day; and he says that, while he cannot swear positively it is, the same paper, he thinks it was. Now, if it was before Judge Wright two or three weeks before the 8th day of March, it could not have been witnessed by this Hover on the 7th of March, and his testimony is false if that was so; and still you will consider it. Now, Hover himself, in answer to my questions, stated that the testimony that was given was false, that he was a cousin of one of the attorneys in the case, and that he advised him to keep out of the way of the officer who wanted to serve a subpœna upon him. My friend McDonell has stated that that was no offense under the law of Michigan,—to keep out of the way of an officer. If he had kept out of the way entirely,—got away before he was served with the subpœna,—it certainly would have left his own reputation a great deal better than it may be after this trial. But he admits that he swore falsely on a former occasion. He plastered himself over many times more by detailing his connection with the forgery of this will, if his version be true.

"Now, gentlemen, you can believe that testimony if you want to, or you can reject it totally, or you can believe any part of it you are a mind to, and reject the balance. You have the whole matter in your hands, and you ought to apply your best judgment to it. It is a general rule of law that, if a witness deliberately and intentionally and knowingly testifies falsely in regard to one part of a case, all his evidence in the case may be rejected by the jury,

and in many cases ought to be, because the law does not trust even to the jury the task of picking out the truth from the false parts of the perjurer's testimony.

"Now, in support of the will there is the boy Bruce, who said he saw this man Hover have it along at an early day; that it was given to the deceased; that he read it, and gave it back to him. Petterson said it was given to this young man for safe-keeping when the execution of the will was finished. The Ferris boy testified that he worked some days to pay up a debt of his father to Hover, and that he saw the will; that this man told him that, when he had worked out the debt, he was going to give it to his father. Now, these are confirmatory circumstances that you may consider, always bearing in mind that, to sustain this will, you have got to find that it was signed at the time Petterson signed it, in the presence of the deceased, at his request, and in the presence of each other. If you do not find that fact, you will find against the will. If you do find it, you will find in favor of the will. And it seems to me that that is the critical point in the case, and so far as the testimony tends to confirm that view of it, or tends to disaffirm that view, you ought to consider it carefully. If you find a verdict, it will either be that you find in favor of the will, or that you find against the will. Put it in those words, and the court will understand by that that you find that no will was executed or proved, or you will find that this will was executed."

Section 9266, 3 Comp. Laws, provides:

"No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses."

It is the contention of counsel for contestant that this paper does not constitute a will; that, if it was ever executed, it is nothing more than a duebill or an acknowledgment of a debt of $800 owing to Miss Ferris by the deceased. We cannot agree with this construction of the paper. It is a will, and not an acknowledgment of a debt. If it were a duebill or an acknowledgment of a debt, it

could not have been defeated by the marriage of the testator. It was to take effect only at the death of the testator. It was said in *Lautenschlager* v. *Lautenschlager*, 80 Mich. 292 (45 N. W. 147):

"The form of any instrument is of little consequence in determining whether it is a will or not. If it be executed with the formalities required by the statute, and if it is to operate only after the death of the maker, it is a will."

Many cases are cited in that case in support of the above proposition, to which attention is called. Woerner, Adm'n, p. *61, and notes.

The jury found, under proper instructions, that it was the intention of Jacob E. Embody to will to Rubie Ferris the sum of $800, to be taken by her at his death, on condition that he died a bachelor; and we think the finding is supported by the evidence. We find no error in the record in the admission or rejection of evidence. The cause was fairly submitted to the jury.

The order of the court below must be affirmed.

The other Justices concurred.