## IN RE MARTHA KEMP'S WILL.

516

*(August* 17, 1936.)

LAYTON, C. J., and RODNEY, J., sitting.

*Robert G. Houston* and *Eugene F. Bogan* (of Washington, D. C.) for appellants.

*Joseph L. Cahall* and *James M. Tunnell* for appellees.

Superior Court for Sussex County, No. 41, June Term, 1936.

LAYTON, C. J., delivering the opinion of the Court:

The statute, *Section* 3241, *Rev. Code* 1915, provides,

"Every will, whether of personal or real estate, must be in writing and signed by the testator, or by some person subscribing the testator's name in his presence and by his express direction, and attested and subscribed in his presence by two or more credible witnesses, or it shall be void."

It is not denied that the paper writing was signed by the testatrix. The witnesses to her signature were "credible witnesses" even though they were employed by the executor. *Hudson v. Flood*, 5 *Boyce* 450, 94 *A.* 760; *In re Lecarpentier's Will*, 10 *Del. Ch.* 503, 91 *A.* 204.

Although the signatures of the witnesses were not below that of the testatrix, owing to the lack of space on the sheet of paper, in every reasonable sense they were subscribed.

Formal publication, or the act of declaring or making known to the witnesses that the testator understands and intends the instrument subscribed by him to be his last will and testament, is not required by the statute. Where a testator has signed a will, knowing it to be such, and either by himself or through another person, directly or impliedly requests the witnesses to subscribe their names as witnesses to his signature, and they do so in his presence, a valid execution of the will is accomplished, although they neither saw the testator sign his name, nor were made

acquainted with the nature of the instrument. *Lodge v. Lodge's Will,* 2 *Houst.* 418, 421; *In re Salmon's Will,* 7 *Boyce* 446, 108 *A.* 93.

■ Nor, in the usual case, is it necessary to prove that the testator read the instrument or that it was read to him. He will be presumed to have known the contents of the instrument which he has signed as his will unless the contrary appear. *Smith v. Dolby,* 4 *Harr.* 350.

■ The purpose of an attestation clause is to preserve in permanent form a memorandum of the facts attending the execution of the will, so that in the event of the death of the attesting witnesses, or of a failure of memory on their part, the due execution may be proved. A formal attestation clause is a useful and desirable thing. Where it recites a compliance with all the formalities of execution and is signed by the witnesses, it is *prima facie* evidence of due execution, but in the absence of statute it is not necessary to the validity of a will. 68 *C. J.* 711; 1 *Underhill, Wills,* § 200; *Schouler, Wills,* 381; 1 *Woerner, Am. Law of Admn.* 71. The validity of a will depends upon its execution in conformity with the statute, which, usually, is determined by the testimony of the subscribing witnesses. 1 *Underhill, Wills,* § 200.

In *Rash v. Purnel et al.,* 2 *Harr.* 448, it appears that the attestation clause consisted of the words "Signed, sealed and delivered." While no objection seems to have been made on that ground, it is quite clear that the court regarded the clause as sufficient.

■ The testimony of the subscribing witnesses is clear and unequivocal that the testatrix signed her name to the paper writing as and for her last will and testament, in the presence of the witnesses who, at her implied if not

expressed request, and in her presence and in the presence of each other subscribed their names as witnesses. The facts set forth in the recitals of the usual attestation clause are fully proved.

*Animus testandi* is the intention or serious purpose to make a will. This is an essential, and is a feature which distinguishes wills from other instruments; but the contention of the appellants that *animus testandi* must be proved from the instrument itself is not, we think, sound. Whether the maker of an instrument for which probate is sought intended it as a will, or as an instrument of some other character, should, if possible, be determined from the face of the paper. But no particular form of words is necessary to show testamentary intent, and there is no fixed rule by which the presence or absence of such intent may be determined. Where the character of the instrument is doubtful, or its nature uncertain, extrinsic evidence of the circumstances surrounding its making is admissible to aid in the determination of the question. The actual intent of the maker of the instrument will be allowed to prevail if it can be gathered from it and the surrounding circumstances that a revocable disposition of the maker's property to take effect after death, was intended. And the declarations of the maker, whether made before, at or after the execution of the instrument, may be received to show whether he did or did not regard it as a will. The extrinsic evidence is not for the purpose of ascertaining an intention not to be found in the instrument, but to ascertain with what intention the execution of the instrument was accompanied. 1 *Underhill, Wills,* §§ 37, 38, 39; 68 *C. J.* 604, 605, 606, 611, 624.

It is, of course, to be understood that where a writing is on its face non-testamentary in character, and there is no ambiguity, parol evidence is not admissible to show that it was intended as a will.

The failure to employ dispositive words, such as, "give," "devise," or "bequeath" is not, of itself, sufficient to compel the conclusion that the instrument is of such a non-testamentary character that parol evidence may not be introduced to show its true character. 68 *C. J.* 634, note.

Instructions or directions for the preparation of a will, without intent that the writing containing them shall operate as a will, do not, of course, amount to a will. But a testamentary paper in the form of instructions for a formal will may be a valid will if properly executed. 1 *Underhill, Wills,* § 41; 1 *Williams, Executors* (*2d Am. Ed.*), § 60 *et seq.;* 68 *C. J.* 635. See *Boofter v. Rogers,* 9 *Gill* (*Md.*) 44, 52 *Am. Dec.* 680; *Appeal of Scott's Estate,* 147 *Pa.* 89, 23 *A.* 214, 30 *Am. St. Rep.* 713; *In re Beaumont's Estate,* 216 *Pa.* 350, 65 *A.* 799; *Ferris v. Neville,* 127 *Mich.* 444, 86 *N. W.* 960, 54 *L. R. A.* 464, 89 *Am. St. Rep.* 480; *Heaston et al. v. Krieg,* 167 *Ind.* 101, 77 *N. E.* 805, 119 *Am. St. Rep.* 475.

The appellants earnestly contend that the paper writing is not a will, and was not intended by Mrs. Kemp to be her last will and testament. The argument is that it is nothing more than it appears to be, a memorandum from which a will was to have been prepared, and which, in fact, was prepared.

There are two questions to be considered, first, with respect to the paper itself, second, with respect to the intention of Mrs. Kemp in signing it.

The form of a will is of little importance except as it may bear upon the question of intent. Any writing, however informal it may be, made with the express intent of vesting the testator's property in others upon his death, if executed as the statute requires, will be a valid testamentary disposition, no matter what name the testator may

give it. 68 *C. J.* 634; 28 *R. C. L.* 109; 1 *Underhill, Wills, c.* 3; 2 *Underhill, Wills,* § 903; 1 *Williams, Ex'rs* (*2d Am. Ed*), §§ 58, 59. See *Small v. Adams et al.,* 17 *Del. Ch.* 316, 154 *A.* 473.

. [17]   The appellants lay great stress upon certain matters of evidence as tending to show that the instrument was not intended by the testatrix as a will. In the record appears a letter written by Mrs. Richardson, a daughter, at the request of her mother, to Mr. Ingram, three days after the date of the instrument. In this letter Mrs. Kemp expresses the wish that the writing of her will be held up until she should return to Lewes as she wanted to make some changes. By itself, the expression in the letter would tend to prove the contention of the appellants that the notes made, by Mr. Ingram were intended as instructions for a will and not as a will itself; but this expression must be considered in the light of other facts and circumstances as disclosed by the record. It is not denied that Mr. Ingram intended to draft a will in form, nor·that Mrs. Kemp knew his purpose and expected him to carry it through. It may be conceded that Mr. Ingram was doubtful whether the paper writing offered for probate would, in fact, meet the requirements of the law. These considerations are of small moment. If Mrs. Kemp did execute the instrument as her last will and testament, the fact that she intended to have a more formal instrument drawn to be by her executed later does not change the nature and effect of her act; nor would the fact that she desired some changes to be made. Mr. Ingram's reply. to this letter, referring indubitably to the formal draft which he had not completed, saying that the matter had not been fully completed, and containing the expression "merely a rough penciled memorandum, however, it might hold if anything happened," contradicts nothing. On the contrary both letters are quite consistent with the proved circumstances, that Mrs. Kemp desired to

execute and did execute the paper writing as her will, well knowing that a more formal draft would be prepared for her execution later. The cogent proof of *animus testandi* accompanying the execution of the probated writing is not to be overcome by these circumstances.

The other letter of Mrs. Richardson, dated October 29th, is purely hearsay. It was admissible, as we view it, only in contradiction of Mrs. Richardson's testimony to the effect that her mother had told her that she had made her will and that she was glad that it was settled. The letter has no affirmative effect. Its tendency was only to affect the credibility of the witness. See *State v. Hopkins (Del. O. & T.)*, 6 *W. W. Harr.* (36 *Del.*) 194, 172 *A.* 841.

The letter of Mr. Ingram, dated October 31, 1935, to Mrs. Richardson, in which he wrote, "If you find that your mother is stronger and think capable of concentrating on the rightful disposition of her estate, and want me to do so, I will try to arrange to make a special trip," does not, we think, discredit his testimony. The letter must be considered in connection with the circumstances. Mrs. Kemp was then in the hospital. He, of course, did not know how ill she was, or whether her then condition was such as would permit an execution of a formal will. The inference drawn by the appellants from this letter is, of course, that Mr. Ingram did not regard the executed instrument as a will. What he thought about its validity is of no moment. The problem before the court is to determine, from the paper writing and from the evidence, what Mrs. Kemp's intention was when she subscribed her name to it. Nor does the fact that Mr. Ingram referred to the paper as "Mrs. Kemp's memorandum of instructions" help the appellants.

Mrs. Bogan's testimony that her mother told her that she had seen Mr. Ingram about making her will, and that

he was going to prepare it and have it ready for her to sign when she got home is not inconsistent with or contradictory of the facts upon which the proponents rely. It is conceded that Mr. Ingram was to prepare a formal draft for Mrs. Kemp's later execution.

Finally, there is the evidence of Mr. Kiess. Much is made of this. The point is made repeatedly that Mr. Ingram's statements to him, made shortly after the execution of the will, and when his recollection may be supposed to be fresh, are more indicative of the truth than his sworn testimony. Mr. Ingram denied having made the statements which Mr. Kiess said he did make, and it is not unfair to say that Mr. Kiess's recollection of what was said to him by Mr. Ingram may have faded to some degree in the interval elapsing between his interview and the time of his testifying.

In our opinion the evidence clearly shows that Mrs. Kemp, suffering from a cancerous condition, planned to go to Washington for further examination. How ill she really was and how she regarded her condition we do not know, but she gave Mr. Ingram instructions which he noted for the drafting by him of her will. He told her to come back after she had thought the matter over. She did return to him, and insisted upon executing the memoranda as and for her last will and testament.

The paper writing, though informal and fragmentary, is intelligible enough, and shows in itself a disposition of property to take effect after death.

We are of opinion, therefore, from an examination of the paper writing itself, and from a close inspection and consideration of the evidence, that Martha Kemp signed the paper writing as and for her last will and testament and with the intention and purpose that it should take effect as

such, although, no doubt, she did expect to execute later a more formal instrument.

We must judge of the case by the evidence. It is plainly sufficient to establish the paper writing as the will of the deceased.

The decree of the Register of Wills admitting the paper writing to probate as the last will and testament of Martha Kemp is affirmed.

Decision with respect to costs and counsel fees is reserved.