In the Matter of the Purported Last WILL and Testament OF Russell M. CARTER.

Supreme Court of Delaware.

Submitted Jan. 4, 1989.
Decided Sept. 26, 1989.

Henry A. Heiman, of Heiman, Aber & Goldlust, Wilmington, for appellant Elizabeth Galvin.

Roger A. Akin (argued), Daniel R. Losco, of Sawyer & Akin, P.A., Wilmington, for appellee Ruth Ann Necastro.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

MOORE, Justice.

This appeal is from a ruling of the Court of Chancery that a will and codicil (the "1979 will") of the decedent, Russell W. Carter, satisfied the execution requirements of 12 Del.C. § 202 and should be admitted to probate.[1] The Vice Chancellor found that Carter's technical mistakes in attempting to execute the instruments were cured by the contemporaneous execution of two self-proving affidavits, which were attached to the will and codicil at all times, and which were signed by Carter and his attesting witnesses in the belief that they were properly executing both the will and codicil.[2]

We agree that these documents clearly manifest the testamentary intent of Carter and substantially comply with the requirements of 12 Del.C. § 202. When an affidavit is attached to a will or codicil, and signed by a testator in the honest belief that he or she is executing the will itself, that signature satisfies Delaware law under the doctrine of integration. Accordingly, we affirm with directions that the Register of Wills admit the 1979 will to probate.

## I.

The basic facts are not in dispute. In July, 1960, Russell W. Carter executed a will, leaving his entire estate to his wife, Mary B. Carter, and designating their two daughters as alternate beneficiaries to share equally if his wife should predecease him. The will was signed by Carter and three attesting witnesses. Its validity is not questioned by any of the parties.

In 1979, Carter had his lawyer prepare a new will in which one of his two daughters was to receive most of the estate to the exclusion of the other daughter. The first four pages of the instrument contained substantive provisions, and the fifth page was a self-proving affidavit. These five pages were stapled together. Carter's lawyer, who prepared the will, mailed it to Carter along with instructions for its proper execution.

On July 2, 1979, Carter invited some neighbors to his house to witness his execution of the will. Among those present were Marion F. Baker, a notary public, and Barbara and Monty Banning, who served as witnesses. The trial testimony established that Mrs. Baker, who had not previ-

---

1. That statute provides:
   § 202. Requisites and execution of will.
   (a) Every will, whether of personal or real estate, must be:
   (1) In writing and signed by the testator or by some person subscribing the testator's name in his presence and by his express direction; and
   (2) Subject to § 1306 of this title, attested and subscribed in testator's presence by 2 or more credible witnesses.

   (b) Any will not complying with subsection (a) of this section shall be void.

2. A self-proving affidavit eliminates one aspect of proof of a will, namely the personal appearance of the attesting witnesses before the Register of Wills. 12 Del.C. § 1305 (1987). The affidavit provides verification of witnesses' signatures and attests that the testator executed the will in their presence while appearing to be of sound mind and free from duress. In re Estate of Nelson, Del.Ch., 447 A.2d 438, 445 (1982).

ously notarized a will, was unfamiliar with the formalities required for the proper execution of such a document.

There was considerable confusion about the places on the fourth and fifth pages of the will where the testator, Carter, and the notary, Baker, were to sign their names. On page four, the notary signed on the line intended for Carter's signature, apparently because the words above it read, "In witness whereof, I have hereunto set my hand and affix my seal....", and the signature line was followed by the word "(SEAL)". Thus, she mistakenly assumed that she was to sign and affix her notarial seal there. In addition, Carter apparently instructed her to do so. The witnesses both signed on the appropriate lines at the bottom of the page. Carter did not sign on the line actually designated for his signature, nor anywhere else on page four. On page five, the self-proving affidavit, Carter, the notary, and the witnesses all signed in the appropriate places. Significantly, the word "testator" appeared only on page five under the line for Carter's signature.

Six weeks later, Carter decided to modify the July 1979 will, and executed a codicil in similar fashion, signing only the self-proving affidavit on the line with the word "testator" typed beneath it. Again, the notary mistakenly signed and affixed her seal on the line where Carter should have executed the document. As before, the self-proving affidavit was properly executed, with the testator, witnesses and notary signing on the appropriate lines.

After Carter's death in March, 1986, the 1979 will and codicil were rejected by the Register of Wills for failure to comply with the requirements of 12 *Del.C.* § 202. Thereafter, Carter's daughter, who was the principal beneficiary and executrix under the new will, filed exceptions to the report of the Register.

Initially, these exceptions were heard by a Master, who found the documents invalid because Carter had failed to sign the will and codicil properly. The Vice Chancellor, however, reversed the decision of the Register and ordered that the 1979 will be accepted for probate. Carter's other daughter, whose beneficial interest was substantially reduced by the new will and codicil, filed this appeal.

## II.

The issue on appeal, whether an improperly executed will may be validated by a properly executed self-proving affidavit, is one of first impression for us. However, the issue has been addressed elsewhere, and the weight of authority holds that a properly executed self-proving affidavit can validate an improperly executed will. *In re Estate of Petty*, 227 Kan. 697, 608 P.2d 987 (1980); *In re Estate of Charry*, 359 So.2d 544 (Fla.App. 4th Dist.1978); *In re Estate of Cutsinger*, 445 P.2d 778 (Okla. 1968). *But see Orrell v. Cochran*, 695 S.W.2d 552 (Tex.1985); *In re Estate of Sample*, 175 Mont. 93, 572 P.2d 1232 (1977); *Boren v. Boren*, 402 S.W.2d 728 (Tex.1966).

## III.

■ In construing a will, the intent of the testator is paramount. *See In re Kemp's Will*, Del.Super., 186 A. 890, 894 (1936); *Goldberger v. Goldberger*, Del.Ch., 102 A.2d 338, 339 (1954). It is clear from the evidence that Carter intended to revise his will in 1979. In doing so, however, the testament must satisfy the statutory requirements of 12 *Del.C.* § 202. Clear evidence of intent cannot abrogate the mandatory provisions of § 202, and this Court "has no power to substitute its judgment for that of the legislature as to the essentials of a will." *In re Panousseris' Will*, Del.Orphans', 151 A.2d 518, 523 (1959).

Section 202 provides that every will must be in writing, signed by the testator, and attested and subscribed in the testator's presence by at least two credible witnesses. 12 *Del.C.* § 202 (1987). In this case, the document was in writing, and Carter's two neighbors satisfied the statutory attestation requirements by subscribing their names on pages four and five of the instrument. The testator, however, did not sign the will on page four. It is apparent from the evidence that Carter was not sure

where to sign. He and the inexperienced notary were confused by the formal language found at the will's end, particularly the word "SEAL." The only signature line with the word "testator" typed beneath it was in the self-proving affidavit on page five of the instrument.

Under the doctrine of integration, a separate writing may be deemed an actual part of the testator's will, thereby merging the two documents into a single instrument. *Walsh v. St. Joseph's Home for the Aged,* Del.Ch., 303 A.2d 691, 694 (1973); *In re Panousseris' Will,* 151 A.2d at 523 n. 2. To invoke this doctrine, the separate writing must have existed at the time the will was executed, and the testator must have intended it to constitute his will. 2 W. Bowe & D. Parker, *Page on Wills* § 19.9, at 75 (Rev.Ed.1960). *See also Walsh,* 303 A.2d at 694. In this case, the self-proving affidavit was stapled to the instrument and was physically attached to the will at all times. The mere fact that the writing was called an affidavit does not lessen the significance of the testator's signature, or his intent. "Any writing, however informal it may be, made with the express intent of vesting the testator's property in others upon his death ... will be a valid testamentary disposition, no matter what name the testator may give it." *In re Kemp's Will,* 186 A. at 895. Viewing the self-proving affidavit as a part of the instrument under the doctrine of integration, the testator's signature on page five of the will substantially complies with the requirement under § 202 that every will be signed by the testator.

We recognize that full compliance with statutory requirements for the execution of wills is necessary to minimize fraud or other improprieties, particularly after the testator's lips are sealed by death or incapacity. *In re Panousseris' Will,* 151 A.2d at 527. Here, there is not the slightest suggestion that the documents Carter signed are inconsistent with his testamentary intent. There is no evidence of undue influence or duress. To the contrary, the testator acted voluntarily, in full command of his mental faculties, and it is beyond doubt that the documents, as executed, reflect his actual intent at the time. The only issue is a highly technical one—did Carter, despite his unquestioned testamentary intent, invalidate his will and codicil by not signing on the right lines? We do not think so. In our opinion his signature on affidavits that were attached to the will and codicil at all times substantially complied with the statutory requirements of § 202. The 1979 will and codicil were both in writing and subscribed and attested to by two credible witnesses. The testator signed the affidavits attached to the documents, which became an actual part of them under the doctrine of integration. To adopt a highly technical rule would only frustrate the obvious intent of the testator, and would not advance the aims of § 202. The judgment of the Court of Chancery is AFFIRMED.