In the Matter of the LAST WILL AND TESTAMENT AND TRUST AGREE-MENT OF Betty R. MOOR a/k/a Isabela Elizabeth Moor, Deceased.

C.A. No. 2231–S.

Court of Chancery of Delaware, New Castle County.

Submitted: April 29, 2005.
Decided: June 8, 2005.

of the relevant statutes because she only directed her executors to dispose of (by sale) property that was of a kind that could be conveyed by use of a separate writing. Because there is no discernible public policy interest that supports reading the term "dispose of" narrowly to preclude a direction by a testator that certain tangible personal property be sold by her executors and that the sale proceeds be given to specific individuals, respect for the legislatures' intention to provide testators with a more flexible means to dispose of their personal property should be respected. And by respecting that legislative intention, the court also honors the clear intent of the testator in this case.

### I. *Factual Background*

Betty R. Moor ("Mrs. Moor") died on April 5, 2002, when she was a resident of Rehoboth Beach, Delaware. Mrs. Moor had executed a will (the "Will") on February 4, 1998 in Fort Lauderdale, Florida, where she resided at that time. The Will named Jerome A. Bauman and April Hudson as Mrs. Moor's executors. The second article of the Will provides for the attachment of a written statement disposing of tangible personal property. The third article—the residuary clause of the Will—directs that the remainder of Mrs. Moor's estate be conveyed to the trustees of the Betty R. Moor Revocable Trust, which she created in 1985, for distribution in accordance with that Trust.

In 2000, Mrs. Moor moved from Fort Lauderdale to Rehoboth Beach, Delaware. She executed two documents related to her Will while living in Delaware. On March 9, 2001, Mrs. Moor executed a personal property memorandum (the "Property Memo") that, as described in the second article of her Will, made several specific bequests of personal property to specific persons. On September 8, 2001, Mrs. Moor executed a codicil to her Will, the

David Nicol Williams, Esquire, and John Legaré Williams, Esquire, The Williams Law Firm, P.A., Wilmington, Delaware, Attorneys for Petitioners Robert Cooper Moor, Jr. and Marilyn M. Moor.

Charles J. Durante, Esquire, and Gregory J. Weinig, Esquire, Connolly Bove Lodge & Hutz, LLP, Wilmington, Delaware, Attorneys for Respondents April L. Hudson and Richard S. McCann, Esq.

### OPINION

STRINE, Vice Chancellor.

In this opinion, I conclude that a testator is not forbidden by Delaware or Florida law from directing, in a personal property memorandum referenced in a valid will, that certain personal property be sold by her executors and that the sale proceeds be given to specific persons. The legislatures of Delaware and Florida have both enacted statutes that grant testators the broad power "to dispose of" certain categories of personal property by separate writings. The testator's actions in this case fell easily within the literal reach

effect of which was to remove Jerome A. Bauman as executor and replace him with Richard S. McCann. April Hudson remained the other executor, and all of the other provisions of the 1998 Will were retained and ratified.

## II. *This Dispute: Is The "Capital Gain Clause" Of Mrs. Moor's Property Memo Effective?*

The penultimate clause of Mrs. Moor's Property Memo is the source of the current dispute. That clause provides the following instruction: "Any items not listed in this WILL are to be auctioned, the capitol gain [sic] from the auction is to be dispersed to those stated in the aforesaid document." I will refer to that provision of the Property Memo as the "Capital Gain Clause" for ease of reference. The Property Memo was signed by Mrs. Moor and notarized by a single witness. In accordance with the Property Memo, eighteen items are to be distributed to five persons.

April Hudson and Richard McCann, as the executors of Mrs. Moor's estate and respondents in this action, concede that the Property Memo was signed by Mrs. Moor and that it reflects the best evidence of her testamentary intent. In accordance with that concession, they intend to distribute the eighteen items described in the Property Memo to the five individuals named as the intended recipients of those items. The executors also agree that Mrs. Moor's misuse of the term "capitol gain," which should be read as "capital gain," properly refers to net proceeds from the sale of her personal property.[1] Further, the executors concede that the Capital Gain Clause reflects the intent that the net proceeds from the sale of Mrs. Moor's

personal property be divided among the five individuals named in the Property Memo.

What occasions this dispute is the executors' contention that the Capital Gain Clause, because it calls for the residue of Mrs. Moor's personal property to be sold and the cash proceeds from that sale distributed to the five named individuals, is unenforceable under the laws of the two states—Delaware and Florida—whose law might govern Mrs. Moor's Will.

The lack of clarity about the choice of law arises because Mrs. Moor was a resident of Florida when she made her Will, but a resident of Delaware when she signed the Property Memo and the Codicil to her Will. And, unlike other of Mrs. Moor's estate planning documents which contained express Florida choice of law provisions, her Will contained no choice of law provision. According to the executors, the choice of law question does not matter. The executors contend that whichever state's law applies, a personal property memorandum may not be used to direct executors to sell certain tangible personalty and convey the sale proceeds to specific beneficiaries. Furthermore, the executors claim that the Capital Gain Clause is equivalent to a bequest of cash, which cannot be accomplished under either Delaware or Florida law by use of a separate writing, such as Mrs. Moor's Property Memo. Bequests of cash, they contend, must be included in the body of a will.

Thus, the executors do not intend to honor the Property Memo in its entirety. They have already honored the provisions of the Property Memo calling for the dis-

---

**1.** In normal usage, "capital gain" refers to profit in excess of cost basis realized on the sale of an asset. *See, e.g.,* I.R.C. § 1001. Here, because the cost basis of the personal property described in the Memorandum was stepped up to its date-of-death value, the cost basis and the sale price of those items would be equivalent, and the concept of "capital gain," in its literal sense, would have no meaning.

tribution of discrete items to the intended recipients, but they intend to disregard the Capital Gain Clause, and to distribute the proceeds of the sale of the rest of Mrs. Moor's personal property—an amount totaling just over $167,000—to April Hudson, Mrs. Moor's niece and a respondent in this case, and Charles Carey, Mrs. Moor's friend and accountant, who are the residual beneficiaries of the Betty R. Moor Revocable Trust, consistent with the residuary clause of the Will,[2] rather than distribute the proceeds pro rata to the five individuals named in the Property Memo. The executors have formulated this intent not because they perceive there to be any ambiguity in the Capital Gain Clause, but because, they contend, distribution of cash is not permitted under the relevant statutes concerning bequests by separate writing.

The executors' intention not to respect the Capital Gain Clause has drawn objection from Mrs. Moor's stepson, Robert Cooper Moor, Jr. ("Cooper"), and her granddaughter, Marilyn Mercedes Moor ("Marilyn"). Both Cooper and Marilyn, the petitioners in this action, are among the five individuals named in the Property Memo who would share pro rata in the sale proceeds if the Capital Gain Clause was honored by the executors. Cooper and Marilyn argue that the Capital Gain Clause is enforceable, as it does not contravene the clear language of the relevant statutes.

### III. Under Either Delaware or Florida Law, The Capital Gain Clause Is Effective

The resolution of this dispute turns entirely on a question of law. As suggested previously, answering that question is complicated to some degree by uncertainty as to what state's law applies to Mrs. Moor's Will. Rather than haggle over choice of law, the parties take the position that choice of law does not matter. The executors contend that, under either Delaware or Florida law, a testator may not, by separate writing, direct that specific personal property be sold and the proceeds of the sale be distributed to specific persons. For their part, Cooper and Marilyn argue that neither Delaware nor Florida law prevents a testator from disposing of personal property by directing that it be sold and the proceeds conveyed to particular persons.

I agree with the parties that there appears to be no material difference between the Delaware and Florida statutes bearing on this issue, and therefore, no definitive choice of law needs to be made.[3] Both states require that, in order to be valid, a will must be signed by two witnesses.[4] Both states also permit bequests of tangible personal property in a separate writing 1) if the separate writing is referred to in the will, and 2) if, as here, the separate writing is signed by the testator.[5]

---

**2.** The Will directs that the residue of her estate be distributed in accordance with the Betty R. Moor Revocable Trust. Because all specific bequests in that Trust have been satisfied with the Trust's assets, the residue of the estate will be conveyed to Hudson and Carey.

**3.** See Telephone & Data Sys., Inc. v. Eastex Cellular, L.P., 1993 WL 344770 at *9 (Del.Ch. Aug. 27, 1993) (holding that, when the substantive law is the same in all relevant jurisdictions, there is no choice of law question

that the court need resolve) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 838 n. 20, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)).

**4.** See 12 Del. C. § 202; Fla. Stat. § 732.502.

**5.** See 12 Del. C. § 212; Fla. Stat. § 732.515. Under the Delaware statute, even an unsigned instrument will be held valid if it is handwritten by the testator. 12 Del. C. § 212.

The types of disposition that may permissibly be made by separate writing are limited under 12 *Del. C.* § 212, which states in part that: "A will may refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the will, other than money, evidences of indebtedness, documents of title, and securities, and property used in trade or business." The analogous Florida statute, *Fla. Stat.* § 732.515, is substantially similar, stating in part that: "A written statement or list referred to in the decedent's will shall dispose of items of tangible personal property, other than property used in trade or business, not otherwise specifically disposed of by the will."

■ The executors argue that the Capital Gain Clause of Mrs. Moor's Property Memo exceeds the scope of these statutes by attempting to devise money gained from the sale of personal property, rather than the personal property itself. Both Delaware and Florida law, they say, forbid the use of a separate writing to dispose of intangible property, like cash and securi-

ties. Therefore, because the Property Memo was not executed in compliance with the requisite formalities applicable to the execution of wills—that is, because the Property Memo was signed by one witness instead of two—the Capital Gain Clause is void. I am not persuaded by this argument, for the following reasons.

Initially and most importantly, the executors' argument would read into the statutory text words of restriction that were not included by the relevant legislatures, contrary to the law of statutory construction in both Delaware and Florida.[6] Both the Delaware and Florida statutes use the broad term "dispose of" in reference to the power that a testator might exercise in a personal property memorandum. The executors contend that this capacious phrase can only be read as meaning "to devise directly to" rather than "to sell and distribute the sale proceeds to." But the term "dispose of" has been employed by the legislatures of both Delaware and Florida in other contexts to refer to an elastic range of activities.[7] Accordingly, I

---

**6.** *See, e.g., Stifel Fin. Corp. v. Cochran,* 809 A.2d 555, 560 (Del.2002) (refusing to "engraft a requirement that creates a further bar" where a specific legislative restriction was absent from a statute); *State v. Trimworks,* 1991 WL 15229, at *3 (Del.Super.Jan.25, 1991) ("[S]tatutory language which is clear on its face should not be given a more restrictive application than its plain language calls for."). *See also Bruner v. GC–GW, Inc.,* 880 So.2d 1244, 1246 (Fla.Dist.Ct.App.2004) (refusing to read restrictive language into a statute, noting that "[w]e are not at liberty to add words to statutes that were not placed there by the Legislature.") (quoting *Hayes v. State,* 750 So.2d 1, 4 (Fla.1999)).

**7.** In Delaware law, the term "dispose of" has been equated with, for example: break, mutilate, or destroy (3 *Del. C.* § 3142(a)); transport, treat, store, or export (7 *Del. C.* § 6309(i)); sell, convey, lease, exchange, or transfer (8 *Del. C.* § 122(4)); remove, conceal, or encumber (11 *Del. C.* § 892(1)); mortgage,

pledge, or abandon (11 *Del. C.* § 4358); assign, devise, bequeath, or encumber (13 *Del. C.* § 311); issue or give (16 *Del. C.* § 7102(2)); hypothecate (18 *Del. C.* § 7501); leave, drop, or throw away (21 *Del. C.* § 4189(e)); use (22 *Del. C.* § 1307(a)); alienate or gift (25 *Del. C.* § 4002). In Florida law, the term "dispose of" has been used even more broadly to mean, for example: destroy (*Fla. Stat.* § 20.255(5)(a)); transfer custody or alter (*Fla. Stat.* § 119.11(4)); sell, lease, mortgage, or transfer (*Fla. Stat.* § 154.209(7)); use (*Fla. Stat.* § 163.01(15)(b)(2)(a)); assign or convey (*Fla. Stat.* § 215.56005(2)(c)(4)); release (*Fla. Stat.* § 255.503(7)); hold or license (*Fla. Stat.* § 282.102(12)); alienate (*Fla. Stat.* § 320.643(1)(a)); exchange (*Fla. Stat.* § 343.54(3)(e)); transport or inter (*Fla. Stat.* § 382.026(7)); endorse, pledge, or hypothecate (*Fla. Stat.* § 425.04(5)); distribute (*Fla. Stat.* § 499.028(10)); create a security interest in (*Fla. Stat.* § 607.0302(4)); own, vote, or lend (*Fla. Stat.* § 607.0302(6)); compromise

find no basis for interpreting the words of the pertinent statutes here in the cramped manner that the executors advocate. Under a literal reading of those statutes, Mrs. Moor "disposed of" her personal property by directing her executors to sell that property and distribute the proceeds to specific persons. Importantly, there is no contention that Mrs. Moor attempted, through the Capital Gain Clause, to devise by her Property Memo a species of property—intangible property—that Delaware or Florida law explicitly preclude from being devised through a separate writing. All of the property covered by the Capital Gain Clause was tangible, identified by the executors, and has, in fact, already been sold by them, generating a substantial amount of cash.

The executors seek to convince me that a more restricted definition of the term "dispose of" should be read into § 212 because the relevant Delaware statute explicitly prohibits a testator from disposing of *money* via a separate writing. They contend that to permit Mrs. Moor to direct her executors, in her Property Memo, to sell certain personal property for cash and distribute the proceeds would be to permit an end-run around the General Assembly's deliberate decision to exclude cash from the kinds of property that may be devised via separate writing. Likewise, the executors note that the relevant Florida statute does not permit a testator to convey intangible property (such as, they claim, money)[8] by a separate writing, and that it would be inconsistent with the intent of the Florida legislature to permit Mrs. Moor, through her Property Memo, to reduce personal property into a liquid pool of cash for distribution. Under both Delaware and Florida law, the executors say, testators must use the body of their wills to distribute intangible property, particularly pure financial assets like cash, negotiable instruments, and securities.

■ The executors ignore that the Florida statute differs from the Delaware statute in that it does not specifically exclude money from disposition by separate writing.[9] This reality somewhat belies the ex-

---

(*Fla. Stat.* § 663.17(7)); deliver (*Fla. Stat.* § 677.303(1)); dispense (*Fla. Stat.* § 812.012(8)(a)); take, possess, or give away (*Fla. Stat.* § 859.058); detain or traffic in (*Fla. Stat.* § 865.10(2)); enforce, satisfy, settle or subordinate (*Fla. Stat.* § 938.29(3)); or abandon (*Fla. Stat.* § 949.07). These wide-ranging legislative usages of "dispose of" tend to inter the notion that the term means only "to devise directly to another," as the executors would have it.

8. In American law, the question of whether cash is tangible or intangible property, and for what purposes, is a matter of more than a bit of confusion and debate. E.g., *compare Blodgett v. Silberman*, 277 U.S. 1, 18, 48 S.Ct. 410, 72 L.Ed. 749 (1928) ("[W]e think that money ... is tangible property and cannot be distinguished from [ ] paintings and furniture ....") *and United States v. Harris*, 805 F.Supp. 166, 176 (S.D.N.Y.1992) (describing "money" as the "quintessential tangible form of property") *with In re Oakley*, 344 F.3d 709,

713 (7th Cir.2003) (concluding, after exhaustive exposition, that cash is intangible property).

9. The differences between the Delaware and Florida statutes track the evolution of the Uniform Probate Code § 2–513, from which both statutes were derived. The pre–1990 version of the Code, which Delaware adopted, precludes dispositions of "evidences of indebtedness, documents of title, and securities," while the post–1990 revision of the Code, which Florida adopted, deleted references to evidences of indebtedness, documents of title, and securities. Comments on the purpose of the 1990 revision of the Uniform Code clarify that the enumerated dispositions were deleted in order to remove a source of confusion from the pre–1990 version, noting that those items "are not items of tangible personal property to begin with." *See Unif. Probate Code* § 2–513, Revised 1990 Version, Comment (1997). Notably, unlike enumerated items that were deleted because

ecutors' contention that choice of law is not important to their argument. But even under the Delaware statute and under the assumption that Florida law is to the same effect, the executors' argument has at best a glancing surface logic—and even that disappears upon closer examination. The point of both the Delaware and Florida statutes is to provide testators with a more flexible means by which to devise their personal property.[10] That legislative intention was accomplished, as are most public policy judgments, by a compromise between competing values. The more rigorous formalities required of the body of a will itself were relaxed, permitting a testator to dispose of personal property by a simple, unwitnessed writing that becomes an annex to the will. By that tradeoff, both legislatures made the judgment that the flexibility and convenience of this method were, on balance, worth the enhanced possibility that such a writing might not reflect the uncoerced, free will of the testator.

There is, of course, risk in this sort of tradeoff. One can easily imagine persons who possess items of personal property—works of art, period piece furniture, sports memorabilia—that are more valuable than

they were clearly *not* tangible personal property, "money" was retained in the revised § 2–513. Comments on the revision specify that the section contemplates disposition by separate writing of "tangible personalty other than money." *See id.* As such, the Uniform Code seems to view money as tangible personalty that is treated differently from species of tangible personalty other than money.

The Florida legislature originally adopted language from § 2–513 that explicitly excluded "money" from devise by separate writing. In 2001, the legislature amended its version of § 2–513, *Fla. Stat.* § 732.515, deleting all reference to money or cash. *See* West's F.S.A. § 732.515. As such, the current statute does not explicitly exclude money from disposition by a separate writing. On the other hand, because the statute only permits disposition of "tangible property" by a separate writing, disposition of money is permitted only if money is considered under Florida law to be "tangible property." That is, if money is not tangible, it is excluded because it is not permitted

Money is not consistently treated as being either tangible property or intangible property under Florida law. For example, *Fla. Stat.* § 192.001(11)(b) states that, as applicable to ad valorem taxes, " 'Intangible personal property' means money . . .," while *Fla. Stat.* § 198.01(10) states that, as applicable to estate taxes, " 'Tangible personal property' means corporeal personal property, including money." Both definitions are limited in application to the statutes in which they appear, and there are no similar definitions applicable to statutes governing the construction of wills.

In light of that inconsistency in Florida law, and the absence of any legislative history explaining the intent behind the 2001 amendment of § 732.515, I am forced to resort to common sense. The Florida legislature deleted statutory language in § 732.515 that unequivocally proscribed dispositions of money. If the legislature viewed money as "intangible property" that should not be disposed of by a separate writing, its amendment had the effect of achieving exactly the same result—the exclusion of money dispositions by separate writing—by replacing unequivocally explicit statutory language with an ambiguous exclusion-by-failure-to-include. I am reluctant to attribute an oddly oblique and confusing approach to the effectuation of public policy to the Florida legislature. It seems more plausible that the Florida legislature intended to relax its enumeration of restricted dispositions, following the modern trend, as reflected in the revision of the Uniform Probate Code, "to permit the disposition of a broader range of tangible personal property." *See* Unif. Probate Code § 2–513, Revised 1990 Version, Comment (1997). But I need not and do not make any definitive interpretation of the Florida statute. Under either reading of the statute, the executors do not prevail.

**10.** *See* Unif. Probate Code § 2–513, Pre–1990 Version, Comment (1997) ("As part of the broader policy of effectuating a testator's intent and of relaxing formalities of execution, this section permits a testator to refer in his or her will to a separate document disposing of tangible personalty.").

their cash and securities. Because a personal property memorandum may be executed without the procedural protections of a will, there is an increased chance that such a memorandum might be induced by designing persons. Under both the Delaware and Florida statutes at issue, the public policy judgment is that this increased chance is worth taking, even if that means, for example, that grandma's expensive Ellsworth Kelly[11] might be devised by a personal property memorandum cajoled out of her by a designing granddaughter.

With this public policy judgment having been made, I fail to see what purpose is served by acceding to the executors' demand to engraft a restriction on the term "dispose of" that does not arise naturally from the statutory text. To do so would do nothing to better protect testators from undue influence.

The executors concede that a testator may convey an expensive painting directly in a separate writing, thereby giving the recipient ownership and the right to sell the painting for cash profit. As a result, it is difficult to conceive of what public policy offense occurs if the testator instead directs her executors to sell the painting and to convey the sale proceeds to certain persons. In either case, the economic incentives for designing persons, and the corresponding economic risk to the testator and other possible objects of her testamentary

good wishes, remain the same. And, in either case, the crucial question should not turn on how many signatures were on the personal property memorandum, but on whether the personal property memorandum was the product of the testator's rational and uncoerced wishes.

In view of these realities, I conclude that accepting the executors' arguments would serve no public policy interest. Indeed, acceptance of their argument would contravene the public policies of Delaware and Florida, by overriding the clearly expressed intent of Mrs. Moor, as set forth in the Capital Gain Clause.[12] That Clause is contained in a Property Memo the executors otherwise concede is a product of Mrs. Moor's free will and clear mind, and that they otherwise intend to respect. To permit the executors to single out the Capital Gain Clause for invalidation would undermine Mrs. Moor's wishes by depriving her intended beneficiaries of her benevolence and bestowing a windfall on the residuary beneficiaries of her will.[13]

IV. *Conclusion*

For the foregoing reasons, the executors shall convey the net proceeds of the sale of the personal property covered by the Capital Gain Clause to the five individuals referred to in Mrs. Moor's Property Memo, with each beneficiary receiving 20 percent of the total.

11. American minimalist painter and sculptor, b.1923, Newburgh, N.Y.

12. *See Matter of Will of Carter,* 565 A.2d 933, 935 (Del.1989) ("In construing a will, the intent of the testator is paramount."); *Allen v. Dalk,* 826 So.2d 245, 247 (Fla.2002) ("The primary consideration in construing a will is the intent of the testator.").

13. Cooper also raised a general exception to the inventory of personal property items that were sold by the executors. He claimed that

there should have been additional property included. But the executors responded to that objection through counsel by indicating that, to the best of their knowledge, the inventory was complete. In the face of that representation, Cooper failed to provide any evidence that Mrs. Moor actually possessed specific items of property at her death that he alleged were not included in the inventory. At oral argument, I therefore rejected his general exception as too vague and unsubstantiated for further pursuit.

This decision resolves the remaining issue in this case. The executors shall, upon notice as to form, present a conforming final order within five days.